D/F



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

THE PROCTER & GAMBLE COMPANY, : 04-CV-2820

Plaintiff,

US Courthouse
-against- : Central Islip, NY

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a Victory WHOLESALE GROCERS A/k/a SK-TORS; and JOHN DOES 1-50,

Defendants. : August 4, 2004
11:50 a.m.

- - - - - - - - - - - - - - - - X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM WALL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
(By Telephone)

For the Plaintiff: KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, New York 10022-3852
BY: GEOFFREY POTTER, ESQ.
YEHUDIS LEWIS, ESQ.

FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue - 31st Floor
New York, New York 10103
BY: MARK N. MUTTERPERL, ESQ.

For the Defendant SK-TORS a/k/a Victory:
STRAUSS & TROY
150 East Fourth Street
Cincinnati, Ohio 45202-4018
BY: R. Guy Taft, ESQ.

Continued.....

APPEARANCES (Continued):
(By Telephone)

For the Defendant SK-TORS a/k/a Victory:

BONDY & SCHLOSS LLP
60 East 42nd Street - 37th Floor
New York, New York 10165
BY: JOSEPH P. GOLDBERG, ESQ.

JAMES OFFICE, ESQ.
General Counsel
Victory Wholesale Grocers

ALSO PRESENT:

Todd Moss
Director, Health & Beauty Products
Victory Wholesale Grocers

Court Reporter: Dominick M. Tursi, CM, CSR
US District Courthouse
1180 Federal Plaza
Central Islip, New York 11722
(631) 712-6108 Fax: 712-6124
DomTursi@email.com

Proceedings recorded by mechanical stenography.
Transcript produced by computer.

THE COURT: Hello. This is Judge Wall. And we have a court reporter here with us.

Appearances, please.

MR. MUTTERPERL: For Procter & Gamble, Mark Mutterperl from the law firm of Fulbright and Jaworski.

MR. POTTER: This is Jeffrey Potter, also for the Procter & Gamble Company, with the law firm of Kramer Levin Naftalis & Frankel.

Also on the line is my colleague Yehudis Lewis.

Because of the short notice, forgive me. I'm talking from a payphone outside of the Appellate Division. So if the background noise gets too loud, I'll get off the line. Thank you.

MR. GOLDBERG: On behalf of Victory, Joseph Goldberg of the law firm of Bondy & Schloss.

MR. TAFT: Judge, this is Guy Taft, on behalf of Victory, from the law firm of Strauss & Troy in Cincinnati.

Also in my office is Jim Office who is general counsel for Victory. And Todd Moss, who is Victory's director of health and beauty products.

THE COURT: Okay. I understand you folks have had a previous conference with Judge Hurley, who has limited the scope of I guess your proposed hearing next week and directed that you complete expedited discovery by

that time, and he has referred all discovery issues to me.

The only significant one that I'm aware of so far is your disagreement on the confidentiality orders.

Is there anything else?

MR. GOLDBERG: This is Joseph Goldberg.

We sent you this morning, or you should have received this morning, a letter which outlines some of the difficulties Victory has been having in obtaining relevant critical information from the plaintiff in this matter. And I would hope as part of this phone call we may be able to address some of those issues as well, even to the extent that they have been narrowed by the judge's ruling on the scope of the hearing.

THE COURT: What is the date of that letter?

MR. GOLDBERG: That letter went out yesterday and you would have I hope received it via FedEx sometime this morning.

THE COURT: I have a fax letter from Fulbright & Jaworski dated August 3. Is that it?

MR. GOLDBERG: No. This is a letter that went out from Bondy & Schloss via FedEx last evening.

THE COURT: We don't have it.

MR. MUTTERPERL: Mark Mutterperl on behalf of the plaintiff.

We just received our copy of that. And while we

have not had an opportunity to address it yet, it appears as though there is really no dispute that Judge Hurley's rulings have just mooted the issue.

And to the extent that there are documents that we have not yet produced, we thought, based upon our conversations with Mr. Goldberg's cocounsel Mr. Taft, that they understood we were in the process of collecting the documents from our client and will produce them.

To the extent they are asking for deposition witnesses, we have offered the witnesses on the very subjects the judge has permitted, for this Friday, and even sent a follow-up letter yesterday or the day before asking counsel if they want to go ahead on Friday, and still haven't received their response. We have witnesses who we have lined up.

So it seems to me as though the letter that your Honor does not yet have does not raise any issues which need to be resolved.

MR. TAFT: Judge, this is Guy Taft in Cincinnati. Since my name was mentioned in this, I would like to respond.

First of all, at this late date for counsel to tell us that they are assembling documents that they hope to get to us sometime is not very satisfactory.

We have requested discovery. We are under an

order where discovery is supposed to be produced, including the documents, within three days. And the discovery we are requesting has been outstanding for more than a couple of weeks.

And just to put things in a perspective, judge, we will be traveling on Tuesday from Cincinnati to New York. We will be doing our final preparation on Wednesday for this hearing and appearing on Thursday.

So for the plaintiff, who is pursuing this preliminary injunction, to tell me now, on Wednesday -- where, what do we have, four business days left before I'm leaving town? -- to tell me that they are, quote, assembling information that they are going to get to me, is not going to do me a lot of good.

The second point, as to the plaintiff offering up witnesses. I more than a week ago told counsel, and I've told them repeatedly since then, for the plaintiff, that I wanted to take depositions of the plaintiff on Wednesday, which is today, Thursday or Friday, and that we would make our witnesses available during that same time or try to otherwise accommodate them.

They have not made any witnesses available, obviously today, or tomorrow. The only witness that they offered me is a witness regarding the consumer aspects of this. When they offered that witness, which was over the

phone either yesterday or the day before, I can't remember exactly, but when they first offered it, I told them in no uncertain terms that yes, I would like to proceed earlier than Friday if we could, but if Friday is the best they can do, I told them very specifically that yes, I wanted to take that witness and I wanted to take any other witness who they expected to present at this hearing.

And further, that we have a 30(b)(6) notice out to them, that we have had out to them for a couple of weeks, and I wanted to have witnesses responsive to that.

So I just don't want the court to even remotely consider that we have done anything other than pursue this diligently and have stood willing and able to begin these depositions at any time.

What we have right now is, we have that we are going to get some documents that we are assembling. And, No. 2, what we are getting is, the only thing I had was this person on the health issues. And I believe counsel is telling me that they have some other people now who they are going to make available.

And if Friday is the best they can do, there is no question that is when I'm going to have to do it and get on with it.

MR. MUTTERPERL: Your Honor, this is Mark Mutterperl again.

Let's be clear about this. In my hands is an August 3 letter that I faxed to counsel which states: *Please also confirm that we are set for the depositions we have noticed to begin on Monday of Victory's counsel.* (Sic)

So counsel knows from our deposition notices that we are planning to proceed on Monday and Tuesday with depositions in Cincinnati.

And my letter also states: *Please let us know as soon as possible if you wish to proceed on Friday with the depositions* -- plural -- *of Procter & Gamble personnel on the issues that are identified therein.*

THE COURT: Well, all this *he said-she said,* while it might be entertaining to other people, is not getting us anywhere.

I'm going to try to work something out with you in terms of expedited discovery schedule, but all you are doing frankly, everyone, is just wasting your time and mine.

When are you going to produce the documents, Mr. Mutterperl?

MR. MUTTERPERL: We have some documents ready to go today. We expect additional documents in from Procter & Gamble today, which need to be reviewed and produced.

THE COURT: I want them all produced by Friday,

August 6. That's this Friday.

MR. TAFT: Guy Taft for Victory.

I wonder if we could have the documents before we start to take P&G's deposition.

THE COURT: Can you do that, Mr. Mutterperl?

MR. MUTTERPERL: We are producing them as we receive them. As I said, we are producing documents today.

I would expect that we will have them all today, and tomorrow we will produce them. If some trickle in on Friday, I assume Mr. Taft would rather have the remainder on Friday than not at all.

Part of the problem of course has been precisely what the scope is of discovery prior to the preliminary injunction hearing, which Judge Hurley has just clarified for us. So I don't see any problem at all.

THE COURT: All right. That resolves the document issue.

What seems to be the problem with the confidentiality agreement? Mr. Taft, you seem to have a lot of opposition to the proposal by P&G.

MR. TAFT: I think that, yes, we do. And I think that Joe Goldberg is prepared to respond. He is the one who has really been handling that, and I would defer to him on this, with the permission of the court.

THE COURT: Sure.

MR. GOLDBERG: Good morning again, your Honor.

We set forth I believe five material differences. The two stipulations have been submitted respectively by Victory and P&G.

First and foremost, Victory's proposed stipulation would require third parties to sign an acknowledgment agreeing to be bound by the stipulation and not disclosing such information to any other persons or entities.

THE COURT: Stop right there.

What is P&G's opposition to third parties signing such an acknowledgement? Mr. Mutterperl.

MR. MUTTERPERL: Your Honor, those people who we are subpoenaing are not people who are cooperating with us.

It will hinder our investigation into the counterfeiting operation if we have to go and try to obtain permission from people who are potential targets of our investigation before we can use documents with them.

THE COURT: Well, it doesn't prevent you from talking to them or interviewing them or maybe taking statements from them.

It is fairly common in the world of commercial litigation, where a confidentiality agreement is entered

into, to have it binding on third parties and they acknowledge that there is a confidentiality agreement and they acknowledge their obligation not to disclose the information. That is the whole purpose of it.

MR. MUTTERPERL: These are not documents we are giving to third parties. These are documents which, as I understand what we are talking about, is that Victory doesn't want us to know who its trucking company is, who its shippers are. They somehow withheld until late last night the names of their customers.

And when we go out and go to, you know, if we have documents which show the shipments of goods, for example, or invoices, we may need to go to third parties and inquire and show those documents during cross-examination and so forth.

People who are targets are never going to sign off on a confidentiality agreement. They are not going to cooperate with us. They are afraid we are going to sue them.

THE COURT: You refer to them as targets. I doubt they are even going to talk to you.

MR. MUTTERPERL: We probably have three dozen subpoenas issued. And we do have many people who are cooperating with us informally.

MR. GOLDBERG: Your Honor, there are specific

provisions in the stipulation which treat instances when material would be presented to a witness in court or during a deposition.

What we are talking about is much more fundamental and it is background. I would like the court to understand that Victory and plaintiff Procter & Gamble are fierce business competitors. There is great sensitivity on our part with respect to our confidential business information, including but not limited to the identity of our customers, who ships our products, and from what companies we acquire these products.

All we are asking, which we think is very standard and very vanilla, is a stipulation that says when you give our confidential business information to any third party, that party should sign an acknowledgment agreeing to be bound by the stipulation and not reveal our information to other third parties.

And respectfully, I don't think Mr. Mutterperl addressed that basic issue in his response to the court.

THE COURT: All right.

I agree with Mr. Goldberg and want the confidentiality agreement to include that provision.

What is next?

MR. GOLDBERG: On behalf of Victory, we ask that the proposed stipulation provide that it shall apply to

any discovery from any nonparty as if a nonparty was a party to the present action. So, for instance, if a subpoena is issued to one of our customers, we want that subpoena to be issued in a confidential manner; not revealed to anyone else.

And so, too, we want all information acquired from that third party to be treated as confidential; otherwise, the whole purpose of the stipulation would be easily defeated.

THE COURT: What is your objection to that, Mr. Mutterperl?

MR. MUTTERPERL: Well, your Honor, as you know, subpoenas are public documents. And so the subpoenas, themselves, are served upon counsel for other parties in this litigation. And the parties with whom we are dealing can and do ask us for confidentiality agreements if they believe that their materials are confidential.

Practically, nobody has asked us to keep information confidential with the exception of Victory. Moreover, you know, this, too, will put another layer in place which hinders our ability to move through the stream of commerce in our effort to get upstream to the manufacturer of the counterfeit goods.

MR. POTTER: Your Honor, this is Mr. Potter, also counsel to Procter & Gamble.

Forgive me if you have had an opportunity to learn a little bit about the background of this case. But in case you haven't, in a nutshell --

THE COURT: I have.

MR. POTTER: -- there are tens of thousands, if not hundreds of thousands, of adulterated counterfeit bottles of shampoo that have worked their way through and are working their way through the distribution system. Tens of thousands of families have bought this stuff and are using it.

It is our goal to find out where it came from and where it is and get it off the shelves and stop it from being distributed. And to do this we have got to work our way up and down the distribution channel.

I am sure that Victory does not want people to know that it sold counterfeit products. And frankly, that's their problem. They sold them. Our only interest is to get this stuff off of the shelves.

And if this were a scientific formula, a confidential business process, or something of that nature, it would certainly make sense to have these sorts of burdens placed on it. But when our goal is to protect the public health and safety from these adulterated counterfeit products, I really think that comes first.

And we are fine with having our own people sign

these confidentiality agreements, our experts sign these confidentiality agreements, our investigators sign these confidentiality agreements. That's fine. But we need to be able to use this information and the information we gain from our subpoenas and the information we gain from our interviews to work our way out and find the source of these products.

Now, I understand Victory's interests are very different, but I think that when you weigh the two against each other, I think you really need to come out and say we've got to do what we can to get rid of these products and keep them from coming into the distribution chain.

THE COURT: Okay. Is that the end of your speech?

MR. POTTER: Yes.

THE COURT: It is great that you have the public good in mind. I'm thrilled. But I think Victory has a good point.

I agree with Mr. Goldberg about that and I want the confidential agreement to include that provision as well.

What else is there, Mr. Goldberg?

MR. GOLDBERG: Judge, we have two provisions which deal with, respectively, information provided to third parties such as outside investigators as well as

P&G's own internal investigators.

With respect to the latter provision, we only ask thAt they preidentify the P&G employees who they are sharing that information with so that we can ascertain that they are not sales or marketing people but in fact investigators, once again for the concerns I articulated earlier.

With respect to outside investigators, I would point out to the court that there are people in business whose only source of income is buying and selling information with respect to where a secondary wholesaler such as Victory obtains their products. And we want to be quite careful that those types of individuals or companies do not receive our confidential information and that the only outside investigators who receive that information are in fact engaged in finding out the origins of these products.

So we once again ask that P&G preidentify the outside investigator and in that instance allow us sufficient time to the extent we have any objection to that outside investigator. If in fact the outside investigator does not deal with the types of confidential business information that we are concerned about, this becomes a moot issue.

THE COURT: Mr. Mutterperl or Mr. Potter?

MR. MUTTERPERL: Mark Mutterperl.

On outside investigators, it is not appropriate for us to identify the investigators who are assisting us. We are using reputable investigation firms. And, you know, part of what they are doing is investigating based upon anonymity. And it is inappropriate Victory to have some kind of veto power over who our outside investigators are.

Insofar as our inside investigators, it should be sufficient in the protective order to state that the information is limited to counsel and investigators without our identifying the individuals. Victory's only stated interest is to ensure that they are not sales or marketing people.

Well, if the court order limits access to investigators, then if we are giving documents to people who are not investigators, that is in violation of the agreement and that is sufficient.

THE COURT: I agree with you. I don't think there is any need to identify outside third-party investigators or internal ones other than by that category and have a limitation as to the documents to in-house counsel or attorneys representing P&G as well as investigators.

Is there anything else, Mr. Goldberg? Those are

the three main issues, aren't they?

MR. GOLDBERG: Those are the main issues.

I suppose the last issue, just perhaps to reiterate, is that we would like to keep confidential, information obtained from third parties which is our own confidential business information. So, for instance, if a subpoena were issued to one of our customers, and that customer produces documents which we consider confidential, we would like the ability to designate those as confidential.

THE COURT: What is the objection to that, Mr. Mutterperl?

MR. MUTTERPERL: I'm not sure I understood that. Could you restate that, please, Joe?

MR. GOLDBERG: Sure.

In this matter I believe Procter & Gamble has issued to date approximately 50 or 60 subpoenas. One of our concerns is that a subpoena goes to one of our customers. Certainly, as I think we have agreed today, the identity of that customer is confidential.

To the extent that that customer, in response to a subpoena, produces a variety of documents, some of which we would consider proprietary or confidential, we, are confidential, want the ability to designate that information as confidential.

THE COURT: Which restricts their use to counsel and investigators.

MR. GOLDBERG: Correct.

MR. MUTTERPERL: This is Mark Mutterperl.

In the first place, we do not agree that the identity of their customers is confidential. But to the extent that customers produce documents, those are the customers' documents. And those companies are, you know, we are talking about companies like Rite-Aid who can certainly designate their own documents as confidential.

As I mentioned before, we have had some entities that we have subpoenaed ask us for confidentiality agreements. But in large part that type of provision will hinder us in our efforts to continue our investigation and get through the stream of commerce and try to get to the manufacturer.

MR. GOLDBERG: Your Honor, this is Joseph Goldberg again.

I suggest there would be no hindrance whatsoever. The situation would be exactly the same as if those documents came from Victory. And it would defeat the whole purpose of the confidentiality order if in fact the same information that we are desperately attempting to keep confidential is just revealed through another source by virtue of the fact that we have given out to Procter &

Gamble the name of our customers or suppliers.

And just basic fairness, and not to defeat the purpose of the stipulation, would allow us. We think we should be allowed to designate that information as confidential and that Procter & Gamble can do with it as it sees fit pursuant to the terms of the order.

MR. MUTTERPERL: Your Honor, Mark Mutterperl again.

That proposal interjects Victory between our subpoenas and our obtaining the documents. Judge Hurley ordered expedited discovery, and he reaffirmed it last week when we had the court hearing. Under Judge Hurley's two orders, we get documents under subpoena within three days.

If we issue two dozen subpoenas to Victory's customers, then Victory is going to have to review those documents and determine what's confidential before we get them.

So it hinders us both in terms of timing and in our ability to use them quickly and efficiently to get to the heart of the problem. And there is really no basis for it.

If the documents are the company's documents, they can determine whether or not they are confidential. If they are not the company's documents, they are out

there in the public and they have been distributed anyway since people other than Victory have them.

It is not as though we are dealing with trade secrets. We are not dealing with the secret for making Coca-Cola here.

THE COURT: I agree with you. I don't think there is any need for that provision in the agreement.

MR. GOLDBERG: May I be heard on that point?

THE COURT: I just made my ruling.

Anything further?

MR. GOLDBERG: That is it with respect to the confidentiality stipulation, your Honor.

THE COURT: Anything else as to discovery issues?

MR. TAFT: Judge, this is Guy Taft in Cincinnati.

One further small issue is that we have been advised by Procter & Gamble's counsel that they plan to withhold documents based on attorney-client privilege or work product, part of which includes their entire investigation of this matter and so forth.

And one of the things that I have asked for is a privilege log so that we can have some idea as to the propriety of withholding the documents, and we have not gotten that so far either. I wonder if we can get that on

Friday along with the documents being produced.

THE COURT: Mr. Mutterperl?

MR. MUTTERPERL: Your Honor, in the first place, there is a vast difference between the scope of the documents Mr. Taft has been asking for and what Judge Hurley allowed in our last conference call.

In the second place, what Mr. Taft is referring to are Fulbright & Jaworski files and Kramer Levin files.

We are conducting the investigations with the assistance of private investigators. And to the extent that there is an attorney-client privileged document, I mean practically everything that Mr. Taft is talking about is our work product, but the significance of what Judge Hurley has allowed, namely the health to the public from the counterfeit shampoo and the testing done on the counterfeit shampoo, we are producing those documents. And I don't know that there are any documents within that category that are privileged, but if there are, we can provide a privilege log on those documents.

THE COURT: Well, the local rules, as I'm sure you know, require you to do so.

MR. GOLDBERG: Certainly.

THE COURT: So for any of those documents that are P&G documents that are asserted to be attorney-client privilege, just list them in a privilege log and give it

to Mr. Taft on Friday.

MR. MUTTERPERL: In addition, your Honor, the issues that we have before the court now, also stated in the Fulbright & Jaworski letter from yesterday, concerning the depositions of third parties we wish to take prior to the court hearing, specifically we did not get from Victory's counsel until very late last night the list of the entities to whom they sold the counterfeit products.

We need to subpoena them, get their documents and depose them prior to the hearing. And as a result, we have asked the court to expedite certain limited discovery, even more than Judge Hurley permitted specifically.

We asked for permission to obtain documents pursuant to those subpoenas by Friday and to take those depositions beginning on Monday. And we also asked for permission to do those depositions by telephone. We had asked counsel by letter to agree and we haven't received a response on that.

THE COURT: Mr. Goldberg?

MR. TAFT: Your Honor, this is Guy Taft.

This topic actually has just come up. And we actually for some time have been willing to produce our information if counsel would agree or would have agreed to keep it confidential until the court actually ruled on the

extent of it, and of course we would abide by the court's ruling. That wasn't agreed to until yesterday.

I don't have a problem with taking all these depositions by telephone. The problem is, I think we have something like 15 suppliers. It may be even more than that. And Monday, as I understand it, they intend to take Victory's deposition, which I will be in attendance at. And now, at the same time, they are saying that they have to take depositions of every customer that we had. I'm not sure why they need to take that for the preliminary injunction hearing. And it is just unmanageable.

MR. MUTTERPERL: Your Honor, this is Mark Mutterperl.

As I'm sure is perfectly apparent to the court, there are two law firms involved on behalf of both Victory and Procter & Gamble. There is ample staffing here to handle concurrent depositions.

And the need for the customer depositions should be apparent to everyone, as well. Judge Hurley is allowing evidence of Victory's actions with the counterfeit products. We have the need and the right to depose the customers to find out what if anything Victory ever did to inform them that the products are counterfeit, that they are contaminated products, to withdraw them from the marketplace.

Indeed, we learned during the last court hearing from Mr. Taft that Victory has only dealt with 75 percent of the counterfeit products.

So those depositions are very important for us to take. And certainly there is ample staffing. And doing them by telephone makes it much easier and much less expensive for all counsel.

THE COURT: There seems to be no objection to doing it by telephone.

What I would like you to do is confer with one another. Since this is a new issue, try to resolve the schedule between yourselves. If you can't and you need specific rulings from me, let's reconvene this conference call at 3 o'clock this afternoon. At that time any issues that are unresolved as between the parties I will making rulings on and resolve.

MR. GOLDBERG: May we notice those depositions, assuming we have agreement among counsel, for what was the notice we needed, Mr. Mutterperl?

MR. MUTTERPERL: Documents by Friday and depositions beginning Monday.

THE COURT: Yes. That's fine. You will all do that. So you will call me back at 3 o'clock this afternoon?

MR. GOLDBERG: Yes, sir.

MR. MUTTERPERL: Yes, sir

THE COURT: Very good. Thank you.

(Proceedings recessed at 12:30 pm.)

(The following ensued at 3:25 pm.)

THE COURT: This is Judge Wall.

Do we have the same parties from this morning?

MR. TAFT: This is Guy Taft, Judge.

The only difference is that the Victory representative Mr. Moss and their general counsel are no longer here. So it is Mr. Goldberg and me for Victory.

THE COURT: Were you able to resolve your issues?

MR. MUTTERPERL: This is Mark Mutterperl for Procter & Gamble.

The reason we were late in calling you is, we have been discussing both the discovery issues and resolution of the preliminary injunction motion. The latter we are still working on. The former unfortunately we have reached an impasse.

In the event that the preliminary injunction motion is not resolved informally by the parties, we do have a dispute, I guess two disputes, as to the depositions.

The first dispute is that Procter & Gamble wishes to issue subpoenas for the depositions of the

entities to whom Victory sold the counterfeit goods, and to take those depositions in accordance with the timing that the court allowed earlier today; namely, we would like to begin those depositions on Monday and do them by telephone over Monday, Tuesday. We anticipate each deposition is going to be fairly short. I believe there are about 15 of them.

Victory has objected to that on the grounds that we should only take two or three of them and that we are presently scheduled to depose Victory on Monday and they don't want to have resources spent on double tracks of the depositions.

Procter & Gamble's view is, both entities have two law firms and we have plenty of lawyers available to proceed on two tracks.

The second issue is, it appears as though Victory has a person who is responsive to one of our deposition notices of Victory, who resides in Florida. Procter & Gamble wishes to depose them either in Florida or from New York by telephone, but Victory has been resisting that deposition.

THE COURT: Well, why don't you, first and foremost, try to resolve the preliminary injunction motion issue.

MR. MUTTERPERL: We are spending the rest of the

afternoon on that. We have given ourselves the rest of the afternoon.

If we can get it resolved, we will. If we are unable to, judge, then tomorrow morning we need to get on airplanes and start preparing witnesses for depositions of Procter & Gamble employees to be held on Friday in Cincinnati.

THE COURT: I'm not going to give you a formal ruling because I would like to encourage you to resolve the preliminary injunction hearing issue. But I will give the benefit of my thought, which would be that I would, if we get to that point, direct that those depositions do go forward on a two-track system; that is, Victory to produce the witness in Florida, but consistent with the rulings made earlier today by Judge Hurley on the limitations of the preliminary injunction hearing, which is fairly limited, as I understand it.

MR. MUTTERPERL: Correct.

THE COURT: So the deposition would be limited to those issues.

But I would certainly grant the application to, as you called it, two-track the depositions.

So that gives you the benefit of my thinking. I will take a formal application if the time comes.

So why don't you try to spend the time in a

productive way and see if you can't resolve the issues.

If you need a more formal ruling just, call us back and let us know.

MR. MUTTERPERL: We will do that. Thank you.

THE COURT: Thank you, gentlemen.

(Proceedings adjourned at 3:35 pm.)