DJF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIE a/k/a SYLVIA GRUENBERG; and JOHN DOES 1-50,

Defendants.

04 Civ.2820 (DRH)

Order to Show Cause for Preliminary Injunction and Order of Seizure

Upon the First Amended Complaint of The Procter & Gamble Company ("Procter & Gamble"), the declarations and the exhibits annexed hereto, and the Memorandum of Law submitted in support of this order, it is hereby:

ORDERED, that the defendants AMG Worldwide, Inc. ("AMG Worldwide"), AMG Communications, Corp. ("AMG Communications" and together with AMG Worldwide, "AMG"), Gary Gruenberg and Sylvie a/k/a Sylvia Gruenberg ("Sylvia Gruenberg" and together with Gary Gruenberg, the "Gruenbergs") show cause before this Court at Courtroom 930, Alfonse M. D'Amato U.S. Courthouse, United States Courthouse, the Eastern District of New York, 100 Federal Plaza, Central Islip, New

York 11722 on the 1st day of ~~August~~ September, 2004 at 11:30 o'clock a.m., or as soon thereafter as counsel can be heard, why a preliminary injunction, pursuant to Rule 65, Federal Rules of Civil Procedure, should not be issued enjoining AMG and the Gruenbergs, their agents, servants, employees, officers and all other persons in active concert and participation with them, pending the final hearing and determination of this action: DRH

1. From using any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or any marks similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

2. From using any logo, trade name, trademark or trade dress similar to any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of AMG or the Gruenbergs are sponsored by, authorized by or in any way associated with Procter & Gamble;

3. From infringing any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders registered trademarks;

4. From otherwise unfairly competing with Procter & Gamble in the sale, offering for sale or distribution of Pantene or Head & Shoulders;

5. From falsely representing itself as being connected with Procter & Gamble or sponsored by or associated with Procter & Gamble or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that the Grubbers or AMG are associated with Procter & Gamble;

6. From diluting the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or trade dress;

7. From using any reproduction, counterfeit, copy, or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks in connection with the publicity, promotion, sale, or advertising of counterfeit Pantene or Head & Shoulders sold by the Gruenbergs or AMG bearing a copy or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

8. From affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Pantene or Head & Shoulders and from offering such goods in commerce;

9. From destroying any records documenting the manufacture, sale or receipt of any counterfeit Pantene or Head & Shoulders; and

10. From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred in subparagraphs 1-9 above; and it is further

ORDERED, that pending the hearing of Procter & Gamble's motion to confirm the seizure authorized herein, the Clerk of this Court is to keep and maintain under seal all papers filed herein, including this application and the complaint, and that the public scrutiny of such papers shall not be permitted, subject to AMG's and the Gruenbergs' right to access such papers upon presenting the Clerk of this Court with proper identification after the seizure authorized herein has been carried out; and it is further

ORDERED, that the United States Marshal for the District of Florida, or one or more of his deputies, or the Aventura Police Department or the Miami-Dade Police Department or any other local police department in Florida or other law enforcement officers having jurisdiction, if available, in either case assisted by one or more attorneys, private investigators or agents of Procter & Gamble, is directed and permitted to search, anytime between the hours of 9:30 a.m. to 4:00 p.m. DRH seize, copy and sequester at any time, but no later than seven days from the date of this order, the following items in the possession, custody or control of the Gruenbergs and/or AMG in and around 1000 West Island Boulevard, Aventura, Florida 33160, and any other office, warehouse, truck, van, car, storage facility or other location in the possession, custody or control of either or both the Gruenbergs and/ or AMG:

(a) All business records, invoices, correspondence, e-mails, bank records, cancelled checks, wire transfers, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, return, shipment, purchase, sale or offer for sale or distribution of any merchandise bearing the Head & Shoulders or Pantene trademarks or trade dress whether such information is stored in a written or computerized form; and it is further

ORDERED, that all such sequestered materials and records shall be held by the United States Marshal or other law enforcement agency, if possible, and, if not, shall be delivered to Procter & Gamble's attorneys and Procter & Gamble's attorneys shall act as a substitute custodian for the Court subject to the previously noted sealing condition and an inventory of the materials and records shall be filed with the Court by Procter & Gamble's attorneys, pending further order of this Court; and it is further DRH

ORDERED, that to the extent necessary to effect the seizure and sequestration ordered hereinabove, the United States Marshal or other law enforcement officers may use such force as may be reasonably necessary, including breaking any locks if necessary, to enter the premises of defendant, and to inspect the contents of any rooms, closets, cabinets, vehicles, containers, desks computers, laptops or documents located on the premises or any storage rooms located within the same complex as the premises; and it is further

ORDERED, that Procter & Gamble's attorneys may accompany and assist the United States Marshal or other law enforcement officers in determining whether or not an item is covered by the preceding paragraphs and the United States Marshal or other law enforcement officers shall follow such attorneys' determination; and it is further

ORDERED, that Procter & Gamble's attorneys may be accompanied by private investigators and/or computer technicians or Procter & Gamble's private investigators and/or computer technicians may appear without Procter & Gamble's attorneys to obtain copies of documents to be seized that are stored in computerized form and Procter & Gamble's attorneys, private investigators and/or computer technicians may also bring with them still camera or video camera operators to record the seizure; and it is further

ORDERED, that Procter & Gamble's attorneys shall promptly inspect the items seized, and if any items are found to be outside the scope of this Order, such items are to be returned to the Gruenbergs and AMG within five (5) business days of the date this Order is executed; and it is further

ORDERED, that Procter & Gamble shall be responsible to the United States Marshal, the local police department in Florida and other law enforcement officers, for all of their fees and charges incurred in carrying out this Order; and it is further

ORDERED, that Procter & Gamble post an undertaking within three (3) business days of the entry of this Order with the Clerk of the Court in the form of a bond,

cash or check in the sum of $ 75,000 as security for the payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful seizure or wrongfully attempted seizure and such undertaking, if in the form of check or cash, shall be held in an interest-bearing account; and it is further

ORDERED, that service of the Summons and Complaint and of this Order, together with copies of the papers in support thereof, shall be made at the time of the seizure by delivering true copies thereof to any person of suitable age found at the premises and that such service be deemed sufficient service on the Gruenbergs and AMG; and it is further

ORDERED, that answering papers, if any, be personally filed with this Court and personally served upon Procter & Gamble's counsel, Kramer Levin Naftalis & Frankel LLP, at their offices at 919 Third Avenue, New York, New York 10022 attention Geoffrey Potter, Esq. and Fulbright & Jaworski L.L.P. at their offices at 666 Fifth Avenue, New York, New York 10103 attention Mark Mutterperl, Esq. on or before August 25, 2004, at 5 o'clock p.m.; and it is further

ORDERED, that the Gruenbergs and AMG personally serve upon Procter & Gamble's counsel, Kramer Levin Naftalis & Frankel LLP, at their offices at 919 Third Avenue, New York, New York 10022 and Fulbright & Jaworski L.L.P. at their offices at 666 Fifth Avenue, New York, New York 10103, five days before the show cause hearing scheduled herein, copies, to the extent that the original were not seized and sequestered, of all business records, invoices, e-mails, bank records, wire transfers, correspondence,

books of account, letters of credit, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, return, shipment, purchase, sale or offer for sale or distribution of any merchandise bearing the Head & Shoulders or Pantene trademarks or trade dress, whether such information is stored in a written or computerized form, that are in the possession, custody or control of either or both the Gruenbergs and/or AMG; and it is further

ORDERED, that the Gruenbergs and AMG are hereby put on notice that failure to attend the show cause hearing scheduled herein shall result in the confirmation of the seizure authorized herein and the immediate issuance of the preliminary injunction, which shall be deemed to take effect immediately and shall extend during the pendency of this action. The Gruenbergs and AMG are hereby further notified that they shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by them in violation of any of its terms may be considered and prosecuted as contempt of this Court.

The Court has granted the foregoing Seizure Orders without prior written or oral notice to the Gruenbergs or AMG for the reasons set forth below:

(a) The entry of any order other than a seizure order without notice will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984;

(b) Procter & Gamble has not publicized its proposed seizure order;

(c) Procter & Gamble has provided the United States Attorney for the Eastern District of New York with notice of its application for a seizure order pursuant to 15 U.S.C. § 116(d)(2);

(d) Procter & Gamble has provided the Court with substantial evidence that AMG and the Gruenbergs have used a counterfeit mark in connection with the sale, offering for sale or distribution of goods;

(e) Procter & Gamble will incur immediate and irreparable injury if this Court declines to grant a seizure order without notice;

(f) The matters subject to said seizure order will be located at the Gruenbergs' residence from which they operate AMG;

(g) The harm to Procter & Gamble should this Court decide not to grant Procter & Gamble's motion for a seizure order without notice outweighs any harm which the Gruenbergs or AMG may incur in the event this Court grants Procter & Gamble's motion for a seizure order; and

(h) The Gruenbergs and AMG, or persons acting in concert with them, would likely destroy, move, hide or otherwise make inaccessible to the Court the matters which are subject to the proposed seizure order if Procter & Gamble is required to proceed on notice.

Denis R. Hurley
U.S.D.J.

Issued: August 12, 2004 at 4:45 o'clock p.m.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG, SYLVIA a/k/a SYLVIE GRUENBERG and JOHN DOES 1-50,

Defendants.

04 Civ.2820 (DRH)

**DECLARATION OF**
**GEOFFREY POTTER**

GEOFFREY POTTER declares:

1. I am with the law firm of Kramer Levin Naftalis & Frankel LLP which along with the law firm of Fulbright & Jaworski L.L.P. is counsel for the plaintiff, The Procter & Gamble Company ("Procter & Gamble"). I make this declaration based on personal knowledge in support of Procter & Gamble's motions for an *ex parte* seizure order and preliminary injunction against defendants AMG Worldwide, Inc., AMG Communications, Corp., Gary Gruenberg and Sylvia a/k/a Sylvie Gruenberg.

2. If the *ex parte* seizure order is not immediately granted it is my belief that important evidence concerning the manufacturer, sale and distribution of

hundreds of thousands of bottles of counterfeit Head and Shoulders and Patene haircare products may be destroyed.

3. Mr. Gruenberg was personally served on August 10, 2004, with a comprehensive document and deposition subpoena at his home located at 1000 West Island Boulevard, Apartment 1009, Aventura, Florida 33160. (A copy of the subpoena is attached hereto as Exhibit A.)

4. Within hours of being served, Mr. Gruenberg telephoned Nathan Alexander, Esq., an associate with the law firm of Fulbright & Jaworski and left on his voicemail a telephone message. On that same day, Mark N. Mutterperl, Esq., a partner of Fulbright & Jaworski and myself returned Mr. Gruenberg's telephone call.

5. At the start of the conversation, Mr. Gruenberg stated that he had not retained counsel and that he did not intend to retain counsel because he had done nothing wrong and that he wanted to cooperate fully with Procter & Gamble's efforts to stop the counterfeiting of its products.

6. Mr. Gruenberg denied knowing that the products that he sold were counterfeit, however, he readily admitted that he was directly and personally involved with the sale of Head and Shoulders and Patene haircare products to defendant APO Health, Inc. We know from APO Health, Inc. that it purchased hundreds of thousands of counterfeit bottles of Head and Shoulders and Pantene haircare products from Mr. Gruenberg. Mr. Gruenberg claimed that he acted as a broker on behalf of his brother-in-law, a Panamanian national, who he said was a principal of defendant ATM Inc.

7. Mr. Gruenberg stated that he did not have an office. He said that he worked out of his home. He said that he had a company called "AMG" and that its principle business was selling fragrances and sunglasses through the internet. He also stated that AMG also occasionally dealt in products like Patene and Head and Shoulders haircare products.

8. Mr. Gruenberg said that he did not have any documents. In response to further questioning he said that he kept all of his documents on his computer, the same computer on which he runs his internet businesses.

9. Mr. Mutterperl asked Mr. Gruenberg to be sure to print out all relevant documents from his computer and produce them in response to the subpoena. Mr. Gruenberg replied that he would have been glad to do so except that his computer "had a virus" that caused his computer's hard drive to lose all of its data. He further elaborated by stating that he was forced to reformat his hard disk drive and reload all of his software.

10. Mr. Mutterperl then told Mr. Gruenberg that we had a computer technician who could come to his home and restore for him all the data that he lost. Mr. Gruenberg's voice then changed markedly. He stuttered slightly and sounded as though he were extremely nervous. He then said that his hard drive was "so infected by the virus" that he had replaced it with a new hard drive. He then repeated that while he wanted to comply with the subpoena and produce responsive documents, he had none.

11. I insisted that it could still be important for a computer technician to come to his home to see if it is possible recover any documents responsive to the

outstanding subpoena. I made this request because it was obvious to me from the tone of Mr. Gruenberg's voice and the fact that he had changed the story as to what had happened to his computer that in fact he did have on his computer responsive documents. Mr. Gruenberg agreed to permit the computer technician access to his apartment.

12. On August 10, 2004 a computer technician at my request traveled from New York to Miami and on the morning of August 11, 2004 the computer technician accompanied by a Miami based private investigator traveled to Mr. Gruenberg's apartment. Mr. Gruenberg, however, refused to permit them into his apartment. Mr. Mutterperl and I, along with the private investigator and my associate, Yehudis Lewis, then telephoned Mr. Gruenberg. Mr. Gruenberg stated that he would not admit the computer technician into his apartment because he had "thrown his computer away." When asked why he had thrown his computer away, Mr. Gruenberg replied that it had been "spiked" by lightening. Mr. Mutterperl asked Mr. Gruenberg when he had thrown his computer away and Mr. Gruenberg said that he had done it "several days ago."

13. I pointed out to Mr. Gruenberg that since his business was based on the internet he could not possibly work without a computer. Mr. Gruenberg then stated that he had another computer "belonging to his children" that he used to operate his business.

14. I then asked him to let the computer technician into his home to confirm that there were no responsive documents on his computer and Mr. Gruenberg

responded that he had no responsive documents and that he would not permit a computer technician into his home.

15. According to corporate records Mr. Gruenberg's wife, Sylvie Gruenberg, is the sole officer of defendant AMG Communications Corp. (See Exhibit B, attached hereto).

16. Pursuant to non-party subpoenas, we have obtained banking records which disclose that AMG received payment directly for at least some of the counterfeit Head and Shoulders and Patene haircare products. (Exhibit C, attached hereto.)

17. I have been advised by a private investigator that Mr. Gruenberg owns in addition to his apartment a separate locked storage unit in his apartment building which would be an appropriate place to conceal documents and/or computer equipment.

18. This declaration and the other papers in support of Procter & Gamble's motion are being kept confidential and will be filed under seal.

19. Mr. Gruenberg's refusal to obtain counsel coupled with his transparent untruthful statements regarding his computer lead me to conclude that he will destroy or conceal the information concerning the counterfeit products, if those document are not immediately seized.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on the 12th day of August, 2004 at New York, New York.

Geoffrey Potter

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

THE PROCTER & GAMBLE COMPANY, :

Plaintiff, : 04 Civ.2820 (DRH)

- against - :

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIE a/k/a SYLVIA GRUENBERG; and JOHN DOES 1-50, :

Declaration of
<u>Yehudis Lewis</u>

Defendants. :

---------------------------------------------------------------- X

I, Yehudis Lewis, declare:

1. I am an associate of the firm Kramer Levin Naftalis & Frankel LLP, attorneys for plaintiff The Procter & Gamble Company ("Procter & Gamble"). I submit this declaration in support of Procter & Gamble's order to show cause for a preliminary injunction and a seizure order.

2. Pursuant to 15 U.S.C. § 1116(d)(2), I have given notice of Procter & Gamble's *ex parte* application to the United States Attorney for the Eastern District of New York.

# EXHIBITS

# VIEWABLE

# IN

# CLERK'S

# FILE