UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG; SYLVIA a/k/a SYLVIE GRUENBERG; JAN STAHL; FRED HARRICK; PAUL CHOU a/k/a CHOU CHIEN HO; DIEGO INDUSTRIAL, CO. LTD.; LATIN IMPORT SRL, S.A.; CHECKO NEPOMUCENO; CURAUCO FREEZONE DISTRIBUTORS, INC.; QUALITY KING DISTRIBUTORS, INC.; COUNCIL ROCK MEDICAL DISTRIBUTORS; DLR DISTRIBUTION, INC.; ALVARO GIRALDO; ALAN COHEN; GLOBAL MARKETING CENTER; DAVID MINSKY; TOPS GENERAL MERCHANDISING; and JOHN DOES 1-50,

Defendants.

04 Civ. 2820 (DRH)

**THIRD AMENDED**
**<u>COMPLAINT</u>**

<u>Plaintiff Demands Trial by Jury</u>

Plaintiff, The Procter & Gamble Company, by its attorneys, Kramer Levin Naftalis & Frankel LLP and Fulbright & Jaworski L.L.P., for its complaint against defendants, Xetal, Inc. doing business as APO Health, Inc. and Universal Medical Distributors, Inc. (collectively, "APO"), Dr. Jan Stahl ("Stahl"), ATM, Inc. ("ATM"),

Trans Customs Services ("TCS"), Brothers Trading Co. doing business as Victory Wholesale Grocers also known as SK-Tors (collectively, "Victory"), Gary Gruenberg, Sylvie a/k/a Sylvia Gruenberg (together with Gary Gruenberg, the "Gruenbergs"), AMG Worldwide, Inc. ("AMG Worldwide"), AMG Communications Corp. ("AMG Communications" and together with AMG Worldwide, "AMG"); Fred Harrick ("Harrick"), Paul Chou, a/k/a Chou Chien Ho ("Chou"), Diego Industrial Co. Ltd. ("Diego"), Latin Import SRL, S.A. ("Latin Import"), Checko Nepomuceno ("Checko"); Curacao Freezone Distributors, Inc. ("Curacao Freezone"), Quality King Distributors, Inc. ("Quality King"), Council Rock Medical Distributors ("Council Rock"), DLR Distribution, Inc. ("DLR"), Alvaro Giraldo ("Giraldo"), David Minsky ("Minsky"), Tops General Merchandising ("Tops"), Alan Cohen ("Cohen"), Global Marketing Center ("Global"), and John Does 1-50, alleges as follows:

## The Nature of the Action

1. Plaintiff The Procter & Gamble Company ("Procter & Gamble") is a distributor of world-renowned high-quality consumer products sold under various registered trademarks, including "Pantene" and "Head & Shoulders." These trademarks have become extremely valuable as a result of Procter & Gamble's substantial marketing efforts and the tremendous public acceptance of products bearing those distinctive marks. For example, since 1999, Procter & Gamble has spent more than $980 million dollars advertising Pantene and has achieved sales of that product well in excess of $3 billion dollars. Similarly, during that same period, Procter & Gamble has spent more than $286



KL3:2421990.1

million dollars advertising Head & Shoulders and has achieved sales of that product well in excess of $1 billion dollars.

2. Defendants Harrick, the Gruenbergs, ATM, Latin Import, AMG, Chou and Diego knowingly manufactured hundreds of thousands of bottles of counterfeit Pantene and Head & Shoulders hair care products and sold it to defendants APO, Stahl, Global, Cohen and Giraldo in the United States. Defendants Checko and Curacao Freezone arranged for the transport of some of the counterfeit shampoo to the United States and defendant TCS arranged for the distribution of some of the counterfeit shampoo within the United States. The remaining defendants, Victory, Quality King, DLR, Council Rock, Tops and Minsky, all purchased the counterfeit shampoo and resold the shampoo to other distributors and/or retail stores, including nationwide retail pharmacy chains with stores in New York. These sales have irreparably harmed Procter & Gamble's reputation and have defrauded the purchasing public.

3. This action seeks injunctive and monetary relief, including treble damages, costs, attorneys fees, profits and pre-judgment and post-judgment interest, for false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Trademark Act (15 U.S.C. § 1125) and New York General Business Law Section 349, for trademark infringement in violation of Section 32 of the Lanham Trademark Act (15 U.S.C. § 1114), for dilution of mark in violation of Section 43 of the Lanham Trademark Act (15 U.S.C. § 1125) and New York General Business Law

Section 360-l, and for unjust enrichment and unfair competition in violation of New York common law.

Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338 and 1367 and general principles of ancillary and pendent jurisdiction.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

6. Plaintiff Procter & Gamble is a corporation organized under the laws of the State of Ohio. Its principal place of business is in Cincinnati, Ohio.

7. Defendants Gary and Sylvie a/k/a Sylvia Gruenberg reside together as husband and wife in Florida. Personal jurisdiction is proper over them pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

8. Defendant Gary Gruenberg is an officer and the owner of defendant AMG Worldwide. Defendants AMG Worldwide and the Gruenbergs share the same address in Florida. Personal jurisdiction is proper over AMG Worldwide pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

9. Defendant Sylvie a/k/a Sylvia Gruenberg is the sole officer of Defendant AMG Communications and Defendant Gary Gruenberg is the company's registered agent. Personal jurisdiction is proper over AMG Communications pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

10. The Gruenbergs are the moving, active and conscious force behind AMG's counterfeiting activities.

11. Defendant Stahl is an officer of defendant APO. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

12. Defendant APO is headquartered in Oceanside, New York. Personal jurisdiction is proper over APO pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

13. Stahl is the moving, active and conscious force behind APO's counterfeiting activities.

14. Defendant TCS maintains a place of business in Miami, Florida. Personal jurisdiction is proper over TCS pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

15. Defendant Victory's principal place of business is in Springboro, Ohio. Personal jurisdiction is proper over Victory pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and/or 302.

16. Upon information and belief, Defendant Chou resides in Taiwan. Chou is an officer of defendant Diego. His counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Chou pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

17. Diego's principal place of business is in Taiwan. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Diego pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

18. Chou is the moving, active and conscious force behind Diego's counterfeiting activities.

19. Defendant Harrick resides in Panama City, Panama. His counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Harrick pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

20. Upon information and belief, defendant ATM's principal place of business is in Panama. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over ATM pursuant to Fed. R. Civ. P. Rule 4(k)(1) and (2) and N.Y.C.P.L.R. § 302.

21. Defendant Latin Import is a registered Panamanian corporation with a place of business in Panama City. Its counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Latin Import pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

22. Harrick is an officer of both ATM and Latin Import and is the moving, active and conscious force behind both ATM's and Latin Import's counterfeiting activities.

23. Defendant Checko resides in Curacao. His counterfeiting activities have had a substantial impact on interstate commerce. Checko is the director of defendant Curacao Freezone. Personal jurisdiction is proper over Checko pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

24. Upon information and belief, defendant Curacao Freezone's principal place of business is in Curacao. Curacao Freezone's counterfeiting activities have had a substantial impact on interstate commerce. Personal jurisdiction is proper over Curacao Freezone pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

25. Checko is the moving, active and conscious force behind Curacao Freezone's counterfeiting activities.

26. Defendant Quality King is headquartered in Ronkonkoma, New York. Personal jurisdiction is proper over Quality King pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

27. Defendant Council Rock is headquartered in Florida. Personal jurisdiction is proper over Council Rock pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

28. Defendant DLR is headquartered in Florida. Personal jurisdiction is proper over DLR pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

29. Upon information and belief, defendant Giraldo resides in Florida and in Queens, New York. Personal jurisdiction is proper over Giraldo pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and/or 302.

30. Defendant Minsky is an officer of defendant Tops. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

31. Defendant Tops is headquartered in Brooklyn, New York. Personal jurisdiction is proper over Tops pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. §§ 301 and 302.

32. Minsky is the moving, active and conscious force behind Tops's counterfeiting activities.

33. Defendant Cohen is an officer of defendant Global. Personal jurisdiction is proper over him pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

34. Defendant Global is headquartered in Florida. Personal jurisdiction is proper over Global pursuant to Fed. R. Civ. P. Rule 4(k)(1) and N.Y.C.P.L.R. § 302.

35. Cohen is the moving, active and conscious force behind Global's counterfeiting activities.

36. Defendants John Does 1-50 are individuals and business entities, whose identities are presently unknown to Procter & Gamble, who participated in the

manufacture, sale or distribution of the counterfeit Pantene and/or Head & Shoulders. To the extent their identities become known to Procter & Gamble, those defendants will be joined and the acts in which they engaged will be pleaded in an amended complaint.

## The Facts

### Procter & Gamble's World-Renowned Trademarks

37. Procter & Gamble is the owner of various incontestable federal trademark registrations for the name "Pantene" and for certain aspects of the Pantene trade dress Those trademarks include Registration No. 1,484,935 registered in the Principal Register on April 19, 1988, Registration No. 638,163 registered in the Principal Register on December 4, 1956 and renewed on December 4, 1976 and then again in 1996, Registration No. 1,005,694 registered in the Principal Register on March 4, 1975 and renewed on March 4, 1995, Registration No. 1,491,844 registered in the Principal Register on June 14, 1988 and Registration No. 2,207,500 registered in the Principal Register on December 1, 1998. Procter & Gamble also has a pending application for the name "Pantene Sheer Volume."

38. Procter & Gamble is also the owner of various federal trademark registrations for certain aspects of the Pantene Pro-V trade dress. Those registrations include Registration No. 2,757,654 registered in the Principal Register on August 26, 2003 and Registration No. 2,447,036 registered in the Principal Register on April 24, 2001.

39. Procter & Gamble is also the owner of various incontestable federal trademark registrations for the name "Pro-V." Those registrations include Registration No. 1,822,234 registered in the Principal Register on February 22, 1994 and renewed on April 6, 2004, and Registration No. 1,719,290 registered in the Principal Register on September 22, 1992 and renewed in 2002. Procter & Gamble is also the owner of two additional federal trademark registrations for certain aspects of the "Pro-V" trade dress. Those include Registration No. 2,447,037 registered in the Principal Register on April 24, 2001 and Registration No. 2,796,187 registered in the Principal Register on December 16, 2003.

40. In addition, Procter & Gamble owns trademark registrations for the name "Pantene" in the Netherland Antilles, which includes Curacao.

41. Procter & Gamble is the owner of various incontestable federal trademark registrations for the name "Head & Shoulders." Those trademarks include Registration No. 729,556 registered in the Principal Register on April 3, 1962 and renewed on April 3, 1982 and then again in 2002, and Registration No. 1,653,440 registered in the Principal Register on August 13, 1991 and renewed in 2001. Procter & Gamble is also the owner of Registration No. 2,791,735 registered in the Principal Register on December 9, 2003, which is a federal trademark registration for certain aspects of the "Head & Shoulders" trade dress.

42. In addition, Procter & Gamble also owns trademark registrations for the name "Head & Shoulders in the Netherland Antilles, which includes Curacao.

43. Procter & Gamble has spent and continues to spend large sums of money marketing and selling in interstate commerce Pantene and Head & Shoulders shampoo packaged in high-quality bottles bearing its trademarks and trade dress. As a result of the extensive advertising of Pantene and Head & Shoulders in connection with the Procter & Gamble trademarks, the widespread sale of Pantene and Head & Shoulders and the celebrity that the Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress have achieved, shampoo bearing the Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademark and trade dress has been and is now recognized by the public and in the trade as originating from a single source, Procter & Gamble.

44. Pantene and Head & Shoulders bearing the Procter & Gamble registered trademarks and trade dress have come to be known by the purchasing public throughout the United States as shampoo of the highest quality. As a result, the Procter & Gamble trademarks and trade dress, and the goodwill associated with them, are of inestimable value to Procter & Gamble.

45. Procter & Gamble has engaged and continues to engage in interstate activities designed to promote Pantene and Head & Shoulders and the business and goodwill associated with each of its trademarks and to expand the use and reputation of its trademarks, trade dress, logos and property in the state of New York and throughout the United States.

The Manufacture, Sale and Distribution of the Counterfeit Pantene and Head & Shoulders Hair Care Products Through Harrick, the Gruenbergs, ATM, Latin Import, AMG, Chou, Diego, Checko and Curacao Freezone

46. Defendant Harrick and defendant Gary Gruenberg are brothers-in-law. Together, Harrick, through his companies, defendants ATM and Latin Import, and the Gruenbergs, through their companies, defendants AMG, retained defendant Diego and its principal, defendant Chou, to manufacture or cause to be manufactured counterfeit Pantene and Head & Shoulders hair products for sale and distribution throughout the world, including the United States. At the direction of defendants Harrick and the Gruenbergs, defendant Curacao Freezone and its principal, defendant Checko, knowingly shipped the counterfeit shampoo to the United States.

The Sale and Distribution of the Counterfeit Pantene and Head & Shoulders Hair Products Through Defendants APO, Stahl, TCS, Victory, Quality King, Council Rock and DLR

47. In multiple transactions beginning in July 2003 and ending in March 2004, APO and Stahl purchased hundreds of thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG. Chou and Diego knowingly manufactured the counterfeit shampoo that was sold to APO, and Checko and Curacao Freezone knowingly shipped the shampoo to the United States for distribution to APO. APO distributed the counterfeit shampoo in the United States through defendant TCS.

48. APO and Stahl sold the counterfeit shampoo to defendants Victory, Quality King, DLR and Council Rock.

49. Quality King introduced Stahl and APO to Harrick and the Gruenbergs. Upon information and belief, Quality King purchased the Pantene and Head & Shoulders hair care products indirectly from APO and Stahl rather than directly from Harrick and the Gruenbergs because it knew that Harrick and the Gruenbergs were selling counterfeit products and it wanted to minimize its potential exposure by purchasing those counterfeit products through an intermediary.

50. Victory, Quality King, Council Rock and DLR all resold the counterfeit shampoo they had purchased from APO and Stahl to others. For example, Victory sold some of the counterfeit shampoo to Rite Aid.

51. Based on the foregoing, the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely that APO, Stahl, TCS, Victory, Quality King, DLR and Council Rock either knew that the products were counterfeit or, at a minimum, were willfully blind to the facts and failed to make diligent inquiry.

The Sale and Distribution of the Counterfeit
Pantene and Head & Shoulders Hair Products
Through Defendants Global, Cohen, Tops and Minsky

52. Defendants Global and Cohen purchased tens of thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG, and sold it to defendants Tops and Minsky. Tops and Minsky, in turn, resold the counterfeit shampoo to dozens of retail stores located throughout New York City. Chou and Diego knowingly manufactured the counterfeit

shampoo, and Checko and Curacao Freezone knowingly shipped the shampoo to the United States for distribution to Global.

53. Based on the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely that Global, Cohen, Tops and Minsky either knew that the products were counterfeit or, at a minimum, were willfully blind to the facts and failed to make diligent inquiry.

The Sale and Distribution of the Counterfeit Pantene and
Head & Shoulders Hair Products Through Defendant Giraldo

54. Defendant Giraldo purchased thousands of bottles of counterfeit Pantene and Head & Shoulders from defendants Harrick, the Gruenbergs, ATM, Latin Import and AMG. Chou and Diego knowingly manufactured that counterfeit shampoo.

55. Based on the condition of the packaging, the poor quality of the shampoo and the pricing, it is likely Giraldo knew that the products were counterfeit or, at a minimum, was willfully blind to the facts and failed to make diligent inquiry.

First Cause of Action
Federal Trademark Infringement

56. Procter & Gamble repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

57. In violation of 15 U.S.C. § 1114(1)(a), defendants used in commerce, without Procter & Gamble's consent, either a reproduction, counterfeit, copy or colorable imitation of Procter & Gamble's registered mark in connection with the sale,

offering for sale, distribution, or advertising of counterfeit Pantene and/or Head & Shoulders or in connection with which such use that is likely to cause confusion, or to cause mistake or to deceive.

58. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. The defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Second Cause of Action
Federal Trademark Infringement

59. Procter & Gamble repeats and realleges paragraph 1 through 61 as if fully set forth herein.

60. In violation of 15 U.S.C. § 1114(1)(b), some or all of the defendants reproduced, counterfeited, copied or colorably imitated a registered mark belonging to Procter & Gamble and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the offering for sale, distribution or advertising of counterfeit Pantene and/or Head & Shoulders on or in connection with such use that is likely to cause confusion, to cause mistake or to deceive.

61. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and,

unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Third Cause of Action
Federal False Description and False Designation of Origin In Commerce

62. Procter & Gamble repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

63. In violation of 15 U.S.C. § 1125(a)(1)(A), defendants, in connection with the counterfeit Procter & Gamble products, used in commerce a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was likely to cause confusion or to cause mistake, or to deceive as to the approval of defendants' goods by Procter & Gamble.

64. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Fourth Cause of Action
Federal False Advertising

65. Procter & Gamble repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

66. In violation of 15 U.S.C. § 1125(a)(1)(B), some or all of the defendants, in connection with the sale of the counterfeit Procter & Gamble products, used a word, term, name, symbol, or device or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which in commercial advertising or promotion, misrepresented the nature, characteristics, qualities or geographic origin of the counterfeit Procter & Gamble products.

67. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Fifth Cause of Action
Federal Dilution of Mark

68. Procter & Gamble repeats and realleges paragraphs 1 through 70 as if fully set forth herein.

69. The Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress are both famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

70. Defendants have sold and are continuing to sell counterfeit products bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks and trade dress after such trademarks and trade dress became famous.

71. By selling these counterfeit products, defendants have diluted and are diluting the distinctive quality of a mark or trade name owned by Procter & Gamble in violation of 15 U.S.C. § 1125(c).

72. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

## Sixth Cause of Action
## New York Dilution of Mark and Injury to Business Reputation

73. Procter & Gamble repeats and realleges paragraphs 1 through 75 as if fully set forth herein.

74. The Pantene, Pantene Pro-V, Pro-V and Head & Shoulders trademarks and trade dress are distinctive within the meaning of New York General Business Law § 360-l.

75. By selling low-quality counterfeit products bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks and trade dress, defendants have injured and are continuing to injure Procter & Gamble's business reputation and/or defendants have diluted and are continuing to dilute the distinctive quality of a mark or trade name owned by Procter & Gamble, in violation of New York General Business Law § 360-l.

76. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Seventh Cause of Action
New York Deceptive Business Practices

77. Procter & Gamble repeats and realleges paragraphs 1 through 79 as if fully set forth herein.

78. In violation of New York General Business Law § 349, defendants are selling, offering for sale and/or distributing low quality counterfeit products unlawfully bearing the Pantene, Pantene Pro-V, Pro-V and/or Head & Shoulders trademarks.

79. Procter & Gamble has been and continues to be damaged by defendants' above-stated unlawful and deceptive business activities and conduct.

Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Eighth Cause of Action
Common Law Unfair Competition

80. Procter & Gamble repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

81. In violation of the common law of the state of New York, defendants have unfairly competed with Procter & Gamble by selling the counterfeit products.

82. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

Ninth Cause of Action
Common Law Unjust Enrichment

83. Procter & Gamble repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

84. By selling the counterfeit products bearing Procter & Gamble's valuable trademarks, defendants have been unjustly enriched at Procter & Gamble's expense in violation of New York common law.

85. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and, unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable injury, which cannot be adequately calculated or compensated for solely by money damages.

## Relief Sought

Wherefore, Procter & Gamble demands judgment against defendants as follows:

(a) that preliminary and permanent injunctions be issued enjoining defendants and their subsidiaries, parents, affiliates, agents, servants, employees, directors, officers and attorneys and those persons in active concert or participation with them:

(i) from using any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks or any marks similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

(ii) from using any logo, trade name or trademark similar to any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of defendants or of third

parties are sponsored by, authorized by or in any way associated with Procter & Gamble;

(iii) from infringing any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders registered trademarks;

(iv) from otherwise unfairly competing with Procter & Gamble in the sale, offering for sale or distribution of Pantene or Head & Shoulders;

(v) from falsely representing themselves as being connected with Procter & Gamble or sponsored by or associated with Procter & Gamble or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that defendants are associated with Procter & Gamble;

(vi) from using any reproduction, counterfeit, copy, or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks in connection with the publicity, promotion, sale, or advertising of counterfeit Pantene or Head & Shoulders sold by defendants bearing a copy or colorable imitation of any of the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

(vii) from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as

being Pantene or Head & Shoulders and from offering such goods in commerce;

(viii) from diluting the Pantene, Pantene Pro-V, Pro-V or Head & Shoulders trademarks;

(ix) from destroying any records documenting the manufacture, sale or receipt of any counterfeit Pantene or Head & Shoulders; and

(x) from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

(b) ordering that, within thirty days after the entry and service of an injunction, each defendant serve and file a written report under oath setting forth in detail the manner and form in which it has complied with the injunction; and

(c) ordering that all infringing material be seized, impounded and destroyed; and

(d) awarding to Procter & Gamble from some or all of the defendants punitive damages in an amount to be ascertained at trial, but in no event less than $10 million; and

(e) awarding to Procter & Gamble from some or all of the defendants damages and costs in an amount to be ascertained at trial, trebled, and reasonable costs and attorney's fees; and

(f) awarding to Procter & Gamble from some or all of the defendants any and all profits accounting to defendants' sale and distribution of the counterfeit Pantene or Head & Shoulders; and

(g) awarding to Procter & Gamble from some or all of the defendants pre-judgment and post-judgment interest; and

(h) awarding such other and further relief to Procter & Gamble as may be just and proper under the circumstances.

Dated: New York, New York
June 20, 2005

Kramer Levin Naftalis & Frankel LLP

By: [signature]
Geoffrey Potter (GP-8073)
Yehudis Lewis (YL-9974)
Alison Sclater (AS-5789)

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

-and-

Fulbright & Jaworski L.L.P.

By: [signature] /AS
Mark N. Mutterperl (MM-1977)

666 Fifth Avenue
New York, New York 10103-3198
(212) 318-3000

Attorneys for Plaintiff
The Procter & Gamble Company