UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

THE PROCTER & GAMBLE COMPANY, :

: 04 Civ.2820 (DRH)

Plaintiff, :

: **DECLARATION OF**

- against - : **GEOFFREY POTTER**

:

XETAL, INC. d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM, INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; AMG WORLDWIDE, INC.; AMG COMMUNICATIONS, CORP.; GARY GRUENBERG, SYLVIA a/k/a SYLVIE GRUENBERG and JOHN DOES 1-50, :

:

Defendants. :

---------------------------------------------------------------- x

GEOFFREY POTTER declares:

1. I am with the law firm of Kramer Levin Naftalis & Frankel LLP which along with the law firm of Fulbright & Jaworski L.L.P. is counsel for the plaintiff, The Procter & Gamble Company ("Procter & Gamble"). I make this declaration based on personal knowledge in support of Procter & Gamble's motions for an *ex parte* seizure order and preliminary injunction against defendants AMG Worldwide, Inc., AMG Communications, Corp., Gary Gruenberg and Sylvia a/k/a Sylvie Gruenberg.

2. If the *ex parte* seizure order is not immediately granted it is my belief that important evidence concerning the manufacturer, sale and distribution of

hundreds of thousands of bottles of counterfeit Head and Shoulders and Patene haircare products may be destroyed.

3. Mr. Gruenberg was personally served on August 10, 2004, with a comprehensive document and deposition subpoena at his home located at 1000 West Island Boulevard, Apartment 1009, Aventura, Florida 33160. (A copy of the subpoena is attached hereto as Exhibit A.)

4. Within hours of being served, Mr. Gruenberg telephoned Nathan Alexander, Esq., an associate with the law firm of Fulbright & Jaworski and left on his voicemail a telephone message. On that same day, Mark N. Mutterperl, Esq., a partner of Fulbright & Jaworski and myself returned Mr. Gruenberg's telephone call.

5. At the start of the conversation, Mr. Gruenberg stated that he had not retained counsel and that he did not intend to retain counsel because he had done nothing wrong and that he wanted to cooperate fully with Procter & Gamble's efforts to stop the counterfeiting of its products.

6. Mr. Gruenberg denied knowing that the products that he sold were counterfeit, however, he readily admitted that he was directly and personally involved with the sale of Head and Shoulders and Patene haircare products to defendant APO Health, Inc. We know from APO Health, Inc. that it purchased hundreds of thousands of counterfeit bottles of Head and Shoulders and Pantene haircare products from Mr. Gruenberg. Mr. Gruenberg claimed that he acted as a broker on behalf of his brother-in-law, a Panamanian national, who he said was a principal of defendant ATM Inc.

7. Mr. Gruenberg stated that he did not have an office. He said that he worked out of his home. He said that he had a company called "AMG" and that its principle business was selling fragrances and sunglasses through the internet. He also stated that AMG also occasionally dealt in products like Patene and Head and Shoulders haircare products.

8. Mr. Gruenberg said that he did not have any documents. In response to further questioning he said that he kept all of his documents on his computer, the same computer on which he runs his internet businesses.

9. Mr. Mutterperl asked Mr. Gruenberg to be sure to print out all relevant documents from his computer and produce them in response to the subpoena. Mr. Gruenberg replied that he would have been glad to do so except that his computer "had a virus" that caused his computer's hard drive to lose all of its data. He further elaborated by stating that he was forced to reformat his hard disk drive and reload all of his software.

10. Mr. Mutterperl then told Mr. Gruenberg that we had a computer technician who could come to his home and restore for him all the data that he lost. Mr. Gruenberg's voice then changed markedly. He stuttered slightly and sounded as though he were extremely nervous. He then said that his hard drive was "so infected by the virus" that he had replaced it with a new hard drive. He then repeated that while he wanted to comply with the subpoena and produce responsive documents, he had none.

11. I insisted that it could still be important for a computer technician to come to his home to see if it is possible recover any documents responsive to the

outstanding subpoena. I made this request because it was obvious to me from the tone of Mr. Gruenberg's voice and the fact that he had changed the story as to what had happened to his computer that in fact he did have on his computer responsive documents. Mr. Gruenberg agreed to permit the computer technician access to his apartment.

12. On August 10, 2004 a computer technician at my request traveled from New York to Miami and on the morning of August 11, 2004 the computer technician accompanied by a Miami based private investigator traveled to Mr. Gruenberg's apartment. Mr. Gruenberg, however, refused to permit them into his apartment. Mr. Mutterperl and I, along with the private investigator and my associate, Yehudis Lewis, then telephoned Mr. Gruenberg. Mr. Gruenberg stated that he would not admit the computer technician into his apartment because he had "thrown his computer away." When asked why he had thrown his computer away, Mr. Gruenberg replied that it had been "spiked" by lightening. Mr. Mutterperl asked Mr. Gruenberg when he had thrown his computer away and Mr. Gruenberg said that he had done it "several days ago."

13. I pointed out to Mr. Gruenberg that since his business was based on the internet he could not possibly work without a computer. Mr. Gruenberg then stated that he had another computer "belonging to his children" that he used to operate his business.

14. I then asked him to let the computer technician into his home to confirm that there were no responsive documents on his computer and Mr. Gruenberg

responded that he had no responsive documents and that he would not permit a computer technician into his home.

15. According to corporate records Mr. Gruenberg's wife, Sylvie Gruenberg, is the sole officer of defendant AMG Communications Corp. (See Exhibit B, attached hereto).

16. Pursuant to non-party subpoenas, we have obtained banking records which disclose that AMG received payment directly for at least some of the counterfeit Head and Shoulders and Patene haircare products. (Exhibit C, attached hereto.)

17. I have been advised by a private investigator that Mr. Gruenberg owns in addition to his apartment a separate locked storage unit in his apartment building which would be an appropriate place to conceal documents and/or computer equipment.

18. This declaration and the other papers in support of Procter & Gamble's motion are being kept confidential and will be filed under seal.

19. Mr. Gruenberg's refusal to obtain counsel coupled with his transparent untruthful statements regarding his computer lead me to conclude that he will destroy or conceal the information concerning the counterfeit products, if those document are not immediately seized.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on the 12th day of August, 2004 at New York, New York.

Geoffrey Potter

# EXHIBIT A

**Issued by the**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

THE PROCTER & GAMBLE COMPANY,

Plaintiff,

- against -

XETAL, INC., d/b/a APO HEALTH, INC. and UNIVERSAL MEDICAL DISTRIBUTORS, INC.; ATM INC.; TRANS CUSTOMS SERVICES; BROTHERS TRADING CO., INC. d/b/a VICTORY WHOLESALE GROCERS a/k/a SK-TORS; and JOHN DOES 1-50,

Defendants.

**SUBPOENA IN A CIVIL CASE**

EASTERN DISTRICT OF NEW YORK

04 Civ. No. 2820 (DRH)

TO: Mr. Gary Gruenberg
1000 West Island Boulevard, Apartment 1009
Adventura, Florida 33160

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

■ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **The deposition will cover topics specified on the annexed Schedule A. The deposition will be recorded by stenographic means and may be videotaped.**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services, 44 West Flagler Street, 14th Floor<br>Miami, Florida 33130 | August 18, 2004,<br>beginning at 9:30 a.m. |

■ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **All documents specified on the annexed Schedule A.**

| PLACE | DATE AND TIME |
|---|---|
| 1000 West Island Boulevard, Apt. 1009, Adventura, Florida 33160<br>or such other place and time as agreed to by the parties. | August 12, 2004,<br>10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Nathan Alexander<br>Attorney for Plaintiff The Procter & Gamble Company | August 9, 2004 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Nathan T. Alexander, Fulbright & Jaworski L.L.P., 666 Fifth Avenue
New York, NY 10103, (212) 318-3000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

## PROOF OF SERVICE

DATE PLACE

**SERVED**

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45. Federal Rules of Civil Procedure. Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party of an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting form the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rules, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and

label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

SCHEDULE A

Definitions and Instructions

A. The term "document," in addition to the meaning provided under Rule 34(a) of the Federal Rules of Civil Procedure, includes without limitation backup and/or archived electronic computerized data compilations and e-mails.

B. "Procter & Gamble" means plaintiff The Procter & Gamble Company and its subsidiaries.

C. "Gruenberg" or "You" means Gary Gruenberg and Sylvie Gruenberg in their personal capacity, and in their capacity as a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to AMG, ATM and Latin Import.

D. "AMG" means AMG Worldwide, AMG Export Trading and AMG Communications and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

E. "ATM" means defendant ATM, Inc. and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

F. "Latin Import" means Latin Import, Inc. and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

G. "Giraldo" means Alvaro Giraldo and Martha Giraldo in their personal capacity, and in their capacity as an officer, director, employee, agent, attorney, representative or

predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to, RASCO Holdings.

H. "AM Associates" means AM & Associates, Inc. and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

I. "Nieves" means Graziella Nieves in her personal capacity, and in her capacity as an officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress.

J. "Villareal" means Justo Villareal in his personal capacity, and in his capacity as a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to AMG, ATM and Latin Import.

K. "Harrick" means Fred Harrick in his personal capacity, and in his capacity as a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to AMG, ATM and Latin Import.

L. "Rosario" means Jairo Rosario in his personal capacity, and in his capacity as a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt,

transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to AMG, ATM and Latin Import.

M. "Montesant" means Antonio Montesant and Koki Montesant in their personal capacity, and in their capacity as a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any company or other entity engaged in the purchase, sale, distribution, receipt, transfer, import or export of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to AMG, ATM and Latin Import.

N. "APO" means defendant Xetal, Inc. d/b/a APO Health, Inc. and Universal Medical Distributors, Inc. and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

O. "Victory" means defendant Brother Trading Co. d/b/a Victory Wholesale Grocers a/k/a SK-Tors and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

P. "TCS" means defendant Trans Customs Services and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

Q. "Universal" means Universal Warehouse and Distribution Services, Inc. and any of its present or former officers, directors, employees, attorneys, agents, representatives, predecessors-in-interest, parents, affiliates or subsidiaries.

R. "Pantene" means Pantene hair care products, including without limitation "Pantene," "Pantene Pro-V," "Pro-V."

S. "Head & Shoulders" means Head & Shoulders hair care products.

T. Pursuant to Fed. R. Civ. P. 45(d), You shall produce responsive documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated requests of this demand. If You have no documents responsive to a particular category, You shall so state in writing.

U. If any document responsive to this request is withheld under a claim of privilege, You shall, pursuant to Fed. R. Civ. P. 45(d)(2) identify the nature of the privilege (including work product) which is being claimed, and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and set forth the following information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to enable Procter & Gamble to contest the claim, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other. If a portion of a document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

V. Unless otherwise stated, each document request and topic for deposition below covers the period between July 1, 2003 and the present.

W. If any document responsive to this request has been, but is no longer, in Your possession, custody or control because it has been destroyed, discarded or placed outside of Your possession, custody or control, You shall furnish a list specifying each such document and setting forth the following information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the name(s) and address(es) of each person who prepared, received, viewed and has or has had possession, custody or control of the document.

Document Requests

1. All documents, including but not limited to invoices, shipping documents, bills, wire transfer confirmations, cancelled checks or statements concerning the purchase of any product bearing the Pantene or Head & Shoulders trademarks or trade dress from any vendor other than Procter & Gamble.

2. All documents, including but not limited to invoices, shipping documents, bills, wire transfer confirmations, cancelled checks or statements concerning the offer for sale of any product bearing the Pantene or Head & Shoulders trademarks or trade dress from any vendor other than Procter & Gamble.

3. All documents, including but not limited to invoices, shipping documents, bills, wire transfer confirmations, cancelled checks or statements concerning the sale of any product bearing the Pantene or Head & Shoulders trademarks or trade dress from any vendor other than Procter & Gamble.

4. All documents, including but not limited to invoices, shipping documents, bills, wire transfer confirmations, cancelled checks or statements concerning the distribution or receipt of any product bearing the Pantene or Head & Shoulders trademarks or trade dress from any vendor other than Procter & Gamble.

5. All documents concerning the source of products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble, including but not limited to the name of the source, its place of business, the nature of its business, its address(es), telephone number(s), e-mail address(es), website(s) and/or facsimile number(s).

6. All documents concerning the source of products bearing the Pantene or Head & Shoulders trademarks or trade dress, including, but not limited to products offered for sale to

You from a vendor other than Procter & Gamble, including but not limited to the name of the source, its place of business, the nature of its business, its address(es), telephone number(s), e-mail address(es), website(s) and/or facsimile number(s), and the price for which the products were being offered.

7. All documents filed with, made available to, presented to or issued by U.S. Customs concerning products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

8. All documents showing the port of embarkation or entry of products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

9. All documents identifying the ship that transported products bearing the Pantene, or Head & Shoulders trademarks or trade dress, including that You purchased or otherwise received from a vendor other than Procter & Gamble.

10. All documents reflecting the identity of any warehouses in which products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble were stored.

11. All documents reflecting, identifying or including the number or other identifying details of the containers in which products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble were shipped.

12. All documents concerning instructions to or from any and all of the following persons or entities concerning the importation, inspection, pick-up, delivery or shipment of products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased

or otherwise received from a vendor other than Procter & Gamble: ATM, Latin Import, AM Associates, Giraldo, Nieves, AMG, Harrick, Villareal, Rosario, Montesant, APO, Victory, TCS or Universal.

13. All manifests, packing lists or other documents concerning products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

14. All documents concerning Your communications concerning products bearing the Pantene or Head & Shoulders trademarks or trade dress with any and all of the following persons or entities: ATM, Latin Import, AM Associates, Giraldo, Nieves, AMG, Harrick, Villareal, Rosario, Montesant, APO, Victory, TCS or Universal.

15. All documents concerning Your communications with the vendor or vendors from whom You purchased or otherwise received products bearing the Pantene or Head & Shoulders trademarks or trade dress, other than Procter & Gamble.

16. All documents concerning any business You have conducted with the vendor or vendors from whom You purchased or otherwise received products bearing the Pantene or Head & Shoulders trademarks or trade dress, other than Procter & Gamble.

17. All documents concerning the ownership of products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

18. All documents concerning payment for products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

19. All documents concerning any refund You received for products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

20. All documents concerning Your return or attempt to return any products bearing the Pantene or Head & Shoulders trademarks or trade dress to a vendor other than Procter & Gamble.

21. All documents concerning the return of any product bearing the Pantene or Head & Shoulders trademarks or trade dress from any of Your customers.

22. All documents concerning customer complaints received by You concerning any products purporting to be Pantene or Head & Shoulders.

23. All documents concerning customer complaints received by You concerning Pantene or Head & Shoulders.

24. All documents concerning any refund You gave for products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

25. All documents concerning the current location or, if disposed, the manner of disposal of any product bearing the Pantene or Head & Shoulders trademarks or trade dress.

26. All documents concerning the manufacture or the manufacturer of any product bearing the Pantene or Head & Shoulders trademarks or trade dress.

27. All photographs, whether taken by means of a digital or film camera, of any product bearing the Pantene or Head & Shoulders trademarks or trade dress.

28. All documents concerning any communications at any time that provided You with any reason to believe that You were offered counterfeit products of any type for purchase, sale or distribution.

29. All documents concerning the nature and extent of Your business relationships with any company, person or other entity from which You have purchased or intend to purchase products purporting to be Pantene or Head & Shoulders or bearing the Pantene or Head & Shoulders trademarks or trade dress.

30. All documents concerning the nature and extent of Your business relationships with any company, person or other entity which has offered to sell you products purporting to be Pantene or Head & Shoulders or bearing the Pantene or Head & Shoulders trademarks or trade dress.

31. All documents concerning the nature and extent of Your business relationships with any company, person or other entity from or to which You have distributed or intend to distribute products purporting to be Pantene or Head & Shoulders or bearing the Pantene or Head & Shoulders trademarks or trade dress.

32. All documents concerning the nature and extent of Your business relationships with any company, person or other entity to which You have sold or intend to sell products purporting to be Pantene or Head & Shoulders or bearing the Pantene or Head & Shoulders trademarks or trade dress.

33. All documents concerning Your company policies and practices regarding the purchase, sale, distribution or handling of counterfeit products.

34. All documents concerning allegations, claims, mediations, arbitration, lawsuits or other judicial or governmental proceedings in which anyone suggested or indicated the

possibility, or charged that You were purchasing, selling, distributing or otherwise involved with counterfeit products of any type at any time.

35. All documents concerning the profits You made on the sale or distribution of any products bearing the Pantene or Head & Shoulders trademarks or trade dress that You purchased or otherwise received from a vendor other than Procter & Gamble.

36. All documents concerning any business You have conducted with any and all of the following persons or entities: ATM, Latin Import, AM Associates, Giraldo, Nieves, AMG, Harrick, Villareal, Rosario, Montesant, APO, Victory, TCS or Universal.

37. All documents concerning efforts, if any, You made to determine whether the products purporting to be Pantene or Head & Shoulders you have purchased, sold, distributed, or otherwise handled were genuine.

38. All documents concerning rumors, if any, You heard about the products purporting to be Pantene or Head &Shoulders you have purchased, sold, distributed or otherwise handled being counterfeit.

39. All documents concerning the formation, business purpose, location and current business activities of AMG, ATM and Latin Import.

40. All documents identifying any business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest or AMG, ATM and Latin Import.

41. All documents concerning the formation, business purpose, location and current business activities of any business of which you are a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest.

42. All documents identifying any business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest of any business of which you are a business partner, officer, director, employee, agent, attorney, representative or predecessor-in-interest.

# EXHIBIT B

Florida Department of State, Division of Corporations
Corporations Online
www.sunbiz.org Public Inquiry

## Florida Profit

### AMG COMMUNICATION CORP.

PRINCIPAL ADDRESS
17100 COLLINS AVE
STE 215
MIAMI FL 33160 US
Changed 05/04/1998

MAILING ADDRESS
17100 COLLINS AVE
STE 215
MIAMI FL 33160 US
Changed 05/04/1998

| | | |
|---|---|---|
| **Document Number**<br>P97000088167 | **FEI Number**<br>650788044 | **Date Filed**<br>10/13/1997 |
| **State**<br>FL | **Status**<br>INACTIVE | **Effective Date**<br>NONE |
| **Last Event**<br>ADMIN DISSOLUTION FOR ANNUAL REPORT | **Event Date Filed**<br>09/24/1999 | **Event Effective Date**<br>NONE |

## Registered Agent

| Name & Address |
|---|
| SILVERSTEIN, BARRY D<br>2999 NE 191ST ST<br>SUITE 704<br>N MIAMI BEACH FL 33180 |

## Officer/Director Detail

| Name & Address | Title |
|---|---|
| GRUENBERG, SYLVIE<br>1000 WEST ISLAND BOULEVARD SUITE 109<br>AVENTURA FL 33160 | D |

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 1998 | 05/04/1998 |

Previous Filing Return to List Next Filing

View Events

No Name History Information

## Document Images

Listed below are the images available for this filing.

05/04/1998 -- ANNUAL REPORT

**THIS IS NOT OFFICIAL RECORD; SEE DOCUMENTS IF QUESTION OR CONFLICT**

Corporations Inquiry Corporations Help

# EXHIBIT C

Received 08/03/2004 17:15 in 04:00 on line [3] for MM07278 Printed 08/03/2004 17:24 * Pg 8/11
AUG-03-2004(TUE) 17:20 GONZALEZ & HERBERT P A (FAX)954 389 8455 P 008/011

WACHOVIA

# Funds Transfer Request

For Use by CMG Field Personnel Only (not for branch use)

Preparer's Signature

Authorized Signature

Account Status: SUFFICIENT
Sufficient (Audio Checked)
Not Sufficient (NSF)

NSF Only

Callback Required (Yes or No)

Initiator's Signature

Customer Accepting Call Back/Phone Number: 010795

Verifier's Signature

NSF Source of Funds

Credit Approver Name (Please Print)

Date

Time of Call

ID

Funds Transfer

WACHOVIA BANK, N.A.

| | |
|---|---|
| Current Date | 05/18/04 |
| Control Number | 150551 |
| Domestic or International | DOMESTIC |
| Non-Repetitive or Repetitive | NON-REPETITIVE |
| Line Number | 0 |
| Amt Verify Cd | |
| Verify I.D. | |
| Type (Fed, Book, Other) | FED |
| Caller | |
| Branch or Department | 0805142 |
| Request Type (Fax, Phone, Walk-in) | WALK-IN |
| Description 2 (GL) | |
| Executive Date | 05/18/04 |
| Domestic Transfer Amount | $ 39,800.00 |
| Type Currency | |
| Foreign Amount | |
| Contract Number / Provided By | |
| U.S. Dollar Amount | $ |
| Int'l Transfer Amount | $ |

**Originator**

| | |
|---|---|
| Name / Address | MARTHA GIRALDO |
| Org | 3 |
| Account Number | 1010076235429 |
| City | 13731 NW 13 STREET |
| State | |
| Zip | |
| Country | |
| | PEMBROKE PINES FL 33028 |

**Receiving Bank**

| | |
|---|---|
| Name / Address | WASHINGTON MUTUAL |
| R/T Number | 267084131 |
| City | 18235 VISCANE BLVD |
| State | |
| Zip | |
| Country | |
| | MIAMI FL 33160 |
| Advice (No Phone Advice Required, Credit and Phone Advice, Notify and Pay, Pay Upon Proper I.D.) | NONE |

**Beneficiary Payment Information**

| | |
|---|---|
| Name / Address | AMG WORLD WIDE INC |
| Org | |
| Account Number | 0944640574 |
| City | |
| State | |
| Zip | |
| Country | |
| Other Payment Information | PAGO CHAMPU |

FL DL G643-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 Exp: 3-4-07

Fee Method (Waive/Charge): CHARGE

**Customer Contract**

All of the above information is complete, correct and provided to Wachovia Bank, N. A. for the purpose of instructing Wachovia Bank, N. A. to transmit a funds transfer. Wachovia Bank, N. A.'s acceptance and execution of the funds transfer is subject to the terms and conditions on the reverse side of this form. My signature below indicates that I have received a completed copy of this Funds Transfer Request.

Customer Signature

Date: 05-18-04

0000 562283 (25/pkg)

CUSTOMER COPY

Received 08/03/2004 17:15 in 04:00 on line [3] for MM07278 Printed 08/03/2004 17:24 * Pg 9/11
AUG-03-2004(TUE) 17:20 GONZALEZ & HERBERT P.A. (FAX)954 389 3466 P 009/011

WACHOVIA

# Funds Transfer Request

For Use by CMG Field Personnel Only (not for branch use)

Preparer's Signature SUFFICIENT

Authorized Signature

Account Status: NSF Only
Sufficient (Audit Checked)
Not Sufficient (NSF)

Callback Required (Yes or No)

Initiator's Signature

NSF Source of Funds

WACHOVIA BANK — Customer Accepted Call Back/Phone Number

05/18/04 — Credit Approver Name (Please Print)

Verifier's Signature

Date — Time of Call

DOMESTIC NON-REPETITIVE 0

## Funds Transfer

| Field | Value |
|---|---|
| Domestic or International | DOMESTIC |
| Non-Repetitive or Repetitive | NON-REPETITIVE |
| Line Number | 0 |
| Current Date | 05/18/04 |
| Control Number | 0805142 |
| Amt Verify Cd | |
| Verify I.D. | |
| Type (Fed, Book, Other) | |
| Request Type (Fax,Phone,Walk-In) | WALK-IN |
| Caller | |
| Branch or Department | |
| Description 2 (GL) | |
| Executive Date | |
| Domestic Transfer Amount | $ 8,000.00 |
| Type Currency | |
| Value Date | |
| Foreign Amount | |
| Exchange Rate | |
| Contract Number / Provided By | |
| U.S. Dollar Amount | $ |
| Int'l Transfer Amount | $ |

## Originator

| Field | Value |
|---|---|
| Name | MARTHA GIRALDO |
| Org | 3 |
| Account Number | 1010076235427 |
| Address | 13731 NW 13 STREET |
| City | PEMBROKE PINES FL |
| State | |
| Zip | |
| Country | |

## Receiving Bank

| Field | Value |
|---|---|
| Name | AMG WORLD WIDE INC |
| R/T Number | 267084131 |
| Address | 18235 VISCAYNE BLVD |
| City | MIAMI |
| State | FL |
| Zip | 33160 |
| Country | |

Advice
(No Phone Advice Required, Credit and Phone Advice, Notify and Pay, Pay Upon Proper I.D.)
NONE

## Beneficiary Payment Information

| Field | Value |
|---|---|
| Name | AMG WORLDWIDE INC |
| Org | |
| Account Number | 094464057 |
| Address | PANTENE |
| City | |
| State | |
| Zip | |
| Country | |
| Other Payment Information | FL DL G643-005-59-084-0 Exp 3-4-07 |

CHARGE

Fee Method (Waive/Charge)

### Customer Contract

All of the above information is complete, correct and provided to Wachovia Bank, N. A. for the purpose of instructing Wachovia Bank, N. A. to transmit a funds transfer. Wachovia Bank, N. A.'s acceptance and execution of the funds transfer is subject to the terms and conditions on the reverse side of this form. My signature below indicates that I have received a completed copy of this Funds Transfer Request.

Customer Signature _______ Date 05-18-04

0000 002283 (25/pkg)

WACHOVIA BANK, N.A.- FL REPORTID P3FT5018 RUN 19-MAY-2004 22:17 PAGE 8031
FULL TRANSACTION REPORT FOR 18-MAY-2004

<<< TRN: 040518-024695 >>>

**** MESSAGE ENVELOPE **** ( Bank : 003 )

DFD CALLER:GONZALEZ, ARIEL C. EXT:

SND DATE:04/05/18

RPT# AMT:39,800.00 CUR:USD TRDR#
TEST: VAL:04/05/18 TYP:FTR/1000 FNDS:S CHG:DB:Y CD:N COM:N CBL:N

*DBT D/1010076235429
MARTHA GIRALDO
13731 NW 13 STREET
PEMBROKE PINES FL
33028
SEND:B/075:0805142
RIVERDALE FT SETTLEMENT
ATTN:WIRE SERVICES
BRONX, NY NY-6142
SNDR REF NUM:040518150551

CDT *A/267084131 ADV:FED
DEPT:0000001660
WASHINGTON MUTUAL BANK, F.A.
BEVERLY HILLS, CA
BNF:/0944640574 CHG: BK?N
AMG WORLD WIDE INC

ORIG TO BNF INFO:
PAGO CHAMPU

**** CREDIT PAYMENT MESSAGE TEXT ****

{1510} Type/Subtype Code:
Type Code: 10 (Transfer of funds)
Subtype Code: 00 (Regular transfer)

{2000} Amount: $39,800.00

{3100} Sending Bank:
ABA number: 063000021
Short name: WACHOVIA BK NA FL
ABA lookup (REL): WACHOVIA BANK, N.A.
JACKSONVILLE, FL
USA

{3320} Sender Reference: 040518024695

{3400} Receiving Bank:
ABA number: 267084131
Short name: WA MU ATLANTA
ABA lookup (AUX): WASHINGTON MUTUAL BANK, F.A.
BEVERLY HILLS, CA

{3600} Business Function Code: CTR (Customer transfer)

```
 ..ZOVIA BANK, N.A. - FL                                   REPORTID P3FT5018   RUN 19-MAY-2004 22:17   PAGE 1048
FULL TRANSACTION REPORT                                                        FOR 18-MAY-2004

<<< TRN: 040518-024970 >>>
---------------------------------------------------------------------------------
  **** MESSAGE ENVELOPE ****                  ( Bank : 003 )


   OPD CALLER:GONZALEZ, ARIEL C.                          EXT:

 SND DATE:04/05/18
---------------------------------------------------------------------------------
RPT#          AMT:8,000.00            CUR:USD                         TRDR#
TEST: VAL:04/05/18                  TYP:FTR/1000 FNDS:S CHG:DB:Y CD:N COM:N CBL:N
---------------------------------------------------------------------------------
*DBT D/1010076235429                    CDT *A/267084131                ADV:FED
MARTHA GIRALDO                          DEPT:0000001660
13731 NW 13 STREET                      WASHINGTON MUTUAL BANK, F.A.
PEMBROKE PINES FL                       BEVERLY HILLS, CA
                    33028
SEND:B/075:0805142                      BNF:/0944640574                CHG:  BK7N
RIVERDALE FT SETTLEMENT                 AMG WORLDWIDE INC
ATTN:WIRE SERVICES
BRONX, NY NY-6142
SNDR REF NUM:040518150561               ORIG TO BNF INFO:
                                        PANTENE



   **** CREDIT PAYMENT MESSAGE TEXT ****

{1510} Type/Subtype Code:
         Type Code:                     10 (Transfer of funds)
         Subtype Code:                  00 (Regular transfer)

{2000} Amount:                          58,000.00

{3100} Sending Bank:
         ABA number:                    063000021
         Short name:                    WACHOVIA BK NA FL
         ABA lookup (REL):              WACHOVIA BANK, N.A.
                                        JACKSONVILLE, FL
                                        USA

{3320} Sender Reference:                040518024970

{3400} Receiving Bank:
         ABA number:                    267084131
         Short name:                    WA MU ATLANTA
         ABA lookup (AUX):              WASHINGTON MUTUAL BANK, F.A.
                                        BEVERLY HILLS, CA

{3600} Business Function Code:          CTR (Customer transfer)
```

**04 Civ. 2820 (DRH)**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**THE PROCTER & GAMBLE COMPANY,**

**Plaintiff,**

**XETAL, INC. d/b/a APO HEALTH, INC., et al.**

**Defendants.**

---

**DECLARATION OF GEOFFREY POTTER, ESQ.**

---

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
**1177 Avenue of the Americas**
**New York, New York 10036**
**(212) 715-9100**

*All communications should be referred*
*to* Harold P. Weinberger, Esq. or Yehudis Lewis, Esq.

and

**FULBRIGHT & JAWORSKI L.L.P.**
**666 Fifth Avenue, 31st Floor**
**New York, New York 10103**
**(212) 318-3000**

*All communications should be referred*
*to Mark N. Mutterperl*, Esq.

**Attorneys for Plaintiff**