UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, Plaintiff, | |
| - against - | 04 Civ. 2820 (DRH) |
| XETAL, INC., et al., Defendants. | |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT GARY GRUENBERG

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 AVENUE OF THE AMERICAS NEW YORK NY 10036

Plaintiff, The Procter & Gamble Company ("P&G"), respectfully submits this reply memorandum of law in further support of its motion under Federal Rules of Civil Procedure Rule 56 for an order awarding it summary judgment, a permanent injunction, statutory damages, punitive damages and attorneys' fees against defendant Gary Gruenberg.

## ARGUMENT

This is the perfect case for summary judgment. Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. Rule 56(c). The e-mail correspondence P&G seized from Harrick's computers in Panama conclusively establish that Gruenberg knowingly conspired with his brother-in-law Harrick to manufacture and sell 11 different SKUS of counterfeit Pantene and Head & Shoulders shampoo.

Gruenberg's protestations of innocence do not create any issues of fact that would preclude summary judgment. To defeat summary judgment, the opposing party's "facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362, 370, n.3 (2d Cir. 2003) (citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact*." *Id.* at 368

(citation omitted) (emphasis in original). Gruenberg's opposition falls far short of this standard.

Gruenberg has submitted absolutely no admissible evidence in support of his professed innocence, and nearly all of the facts he purports to assert in his unsworn letter to the Court are false and, even if true, do not raise a genuine issue for trial. We address each of those "facts" below *seriatim.*

**Assertion:**

> The buyers, Jan Stahl of APO Health (Xetal, Inc.) and Alan Cohen, Global Marketing, per their statements during their depositions as provided in the evidence Exhibit A & B confirm that they were dealing with Harrick who represented ATM, Inc. (Ltr. at 2)[1].

**Response:**

This assertion is false. Both Stahl and Cohen testified that they each dealt with Gruenberg in connection with their respective purchases of the counterfeit shampoo. (Potter Decl. II, Exs. A, B).

**Assertion:**

> The invoices submitted by Plaintiff in Exhibit D will show that these products were purchased directly from Harrick representing ATM, not Gary Gruenberg, Defendant. (Ltr. at 2).

---

1 "Ltr." refers to Gruenberg's letter to the Court dated March 19, 2007 in opposition to P&G's motion for summary judgment. "Potter Decl. I" refers to the declaration of Geoffrey Potter, Esq. dated August 12, 2004. "Potter Decl. II" refers to the declaration of Geoffrey Potter, Esq. dated February 1, 2007. "Potter Decl. III" refers to the accompanying declaration of Geoffrey Potter, Esq. dated April 2, 2007. "De La Cruz Aff. I" refers to the affidavit of Miguel De La Cruz sworn to on February 2, 2007. "De La Cruz Aff. II" refers to the affidavit of Miguel De La Cruz sworn to on March 28, 2007.

**Response**:

This is a complete non-sequitor. No one disputes that Harrick and Gruenberg sold the counterfeit shampoo under the corporate name ATM. But that fact is irrelevant. What is relevant, and what Gruenberg conceded under oath at his deposition, is that he personally offered for sale to ATM's customers the shampoo reflected in those invoices. (Potter Decl. III, Ex. A at 44).

**Assertion**:

> Plaintiff's attorneys are trying to use evidence under seal against Gruenberg which they refuse to turn over to Gruenberg for evaluation." (Ltr. at 2).

**Response**:

This is false. Any evidence P&G has relied on in its motion is annexed as exhibits to P&G's moving papers, copies of which P&G provided to Gruenberg and to his attorney, Michael Miller.

**Assertion**:

> . . . P&G products are made all over the world. International licensed factories make the same national products with various packaging options such as sold in the USA. Distributors buy excess product from the factory and sell to markets needing these products at an agreeable price. This channel of distribution is the usual not the exception and continues to exist today. (Ltr. at 3).

**Response**:

These assertions are irrelevant. This lawsuit does not arise from the sale of authentic grey market goods. Instead, it arises from the knowing manufacture and sale of counterfeit goods.

**Assertion**:

> Gruenberg has never communicated with Defendant Paul Chou in any way shape or form. (Ltr. at 3).

**Response**:

Even if true, this assertion is irrelevant. Regardless whether Gruenberg directly communicated with Chou, he clearly knew Chou's identity and Chou's role in the conspiracy based on the e-mail communications from Chou that Harrick forwarded to Gruenberg. (De La Cruz I Exs. A, B, F, G, I). In any event, it is well-settled that a defendant can be liable for conspiracy without knowing "even the identity of every co-conspirator." *U.S. v. Gleason,* 616 F.2d 2, 16 (2d Cir. 1980) (criminal conspiracy).

**Assertion**:

> In October 2004, P&G thru [sic] a court order, searched the offices and warehouse of Harrick and Latin Import and the Panamanian court found in their final report no evidence of any counterfeiting activity and the case was closed. (Ltr. at 3).

**Response**:

This assertion is false. P&G commenced an action in Panama for the sole purpose of obtaining discovery from Harrick, not to adjudicate the merits of P&G's claims against Gruenberg or even Harrick. Gruenberg was never the subject of that proceeding, and, to our knowledge, the Panamanian Court never issued any findings of

fact or rulings of law regarding the merits of P&G's claims, and Gruenberg has not shown to the contrary.

**Assertion**:

> The De La Cruz Affidavit attached to Plaintiff's motion clearly states that Gruenberg's email address is Cruis4U@earthlink.net. However, when reviewing Plaintiff's own Declaration you will not see any emails going to or coming from that address. What you see from Exhibits A-F is inconsistent email addresses, names, questionable timing between alleged email conversations and responses coming before the questions. We suspect as did the attorneys of other defendants attending the deposition of Gary Gruenberg that the emails used as evidence may have been tampered with as the headers on these Exhibits A-F are different (not consistent with normal email address patterns).

**Response**:

Gruenberg's suggestion that he neither received nor sent any of the incriminating e-mails attached to the affidavit of Mr. De La Cruz is patently false and contrary to the evidence. First, of the eight e-mails attached to Mr. De La Cruz's affidavit that he describes as having been sent either to or from Gruenberg, seven of them are addressed to Cruise4U@earthlink.net.[2] (De La Cruz Aff. I, Exs. A, B, C, E, F, G, I). The eighth e-mail (*id.*, Ex. D), is addressed to fragrancezone@earthlink.net, which Mr. De La Cruz identifies in his affidavit as Gruenberg's other e-mail address. (*Id.* at ¶ 5). Moreover, Gruenberg's "suspicion" that the incriminating e-mails were "tampered with" is preposterous and is, in any event, "not enough to defeat a motion for summary

---

2 We note that in his initial affidavit, Mr. De La Cruz inadvertently identified one of Mr. Gruenberg's e-mail addresses as "Cruis4U@earthlink.net," instead of "Cruise4U@earthlink.net." (De La Cruz Aff. I ¶ 5). To avoid any possible confusion and to clarify the record, Mr. De La Cruz has since submitted another affidavit correcting this typographical error. (De La Cruz Aff. II ¶¶ 2-3).

judgment.'" *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 331 (E.D.N.Y. 1998) (citation omitted). As explained under oath by Mr. De La Cruz, Kroll recovered and restored these emails from Harrick's hard drives. (De La Cruz Aff. I at ¶ 6).

**Assertion**:

> Plaintiff alleges the products sold were counterfeit yet where and when was their recall of the product if it will cause problems? If Plaintiff knows the products can cause problems don't they have a responsibility to have a recall? Or is it more likely that the merchandise was Grey Market Merchandise and not counterfeit as alleged? (Ltr. at 4).

**Response**:

These questions have already been answered in P&G's favor. First, the Honorable Patricia A. Seitz of the United States District Court of the Southern District of Florida has already held that there is no duty in the common law "to notify [the public] that someone else is counterfeiting your product and basically stealing your product." (Potter Decl. II, Ex. K at 4). Second, the shampoo tested counterfeit in both packaging and content. (Potter Decl. III, Ex. B)

**Assertion**:

> Plaintiff attorneys have evidence of a hard drive failure in Gruenberg's computer more than two weeks prior to being served the subpoena. Gruenberg provided receipts of the purchase of a new hard drive which was later returned. Gruenberg provided Dell service case number for failure of computer and services trying to fix the computer. This is all documented. When it was determined the computer was not repairable Gruenberg returned the new hard drive for a refund. Contrary to Plaintiff's statements Gruenberg still had computer at location and never stated that he threw it away. (Ltr. at 4).



KL3 2581909.1

**Response**: Whether Gruenberg deliberately destroyed his hard-drive or coincidentally lost all of the data on his hard-drive and innocently discarded it does not present a genuine issue of material fact on this motion. Either way, the evidence indisputably shows that Gruenberg knowingly conspired with Harrick to manufacture, offer for sale and sell counterfeit Head & Shoulders and Pantene shampoo.[3] It is these undisputed facts that entitle P&G to the relief it requests in this motion.

**Assertion**:

> Gruenberg had nothing to do with th[e] [Florida class action] lawsuit. Michael Miller said to me he wondered why P&G was not taking responsibility making a recall on merchandise that they know was counterfeit unless they really thought the products were grey market. P&G had the case dismissed but denied sanctions. (Ltr. at 4).

---

[3] In any event, Gruenberg's tale of coincidences is just too incredible to be credited. "Under Rule 56(c), . . . a court is never required to accept evidence that is inherently incredible or 'too incredible to be accepted by reasonable minds.'" *Agosto v. Immigration and Naturalization Services,* 436 U.S. 748, 772-73(1978) (*dissent*) (*quoting* 6 J. Moore, Federal Practice 56.15[4], p. 56-621 (2d ed. 1976). "And while the facts must be viewed in the light most favorable to the party opposing a summary judgment motion, this means no more than that 'the party opposing a summary judgment motion is to be given the benefit of all *reasonable* doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial.'" *Id.* at 773, n. 10 (emphasis in original) (*quoting* 10 Wright & Miller, Federal Practice & Procedure, Section 2725, p. 56-510 1973)).

Gruenberg would have this Court believe that, approximately one month after P&G initially filed this action on July 6, 2004, lightening coincidentally "spiked" the one computer hard-drive that contained evidence of Gruenberg's counterfeiting activities, and that he coincidentally threw out that hard-drive just a few short days before he was served with a subpoena, thereby making it impossible for P&G's experts to retrieve any responsive data. (*See generally* Potter Decl. I). While we acknowledge that Gruenberg did provide P&G with receipts for the purchase and return of a hard-drive, the timing of those transactions is -- like everything else about Gruenberg's account – highly suspicious, and should be treated accordingly.

**Response**:

Gruenberg's assertion only reinforces his involvement in the litigation. It appears that the sole purpose of the Florida putative class action was to threaten P&G with substantial liability unless it conceded that the counterfeit products that are the subject of this lawsuit were actually only grey market goods. Whatever the purpose of the Florida action, it does not raise any genuine issue of material fact on this motion.

**Assertion**:

> This evidence is indisputable because the email message dated August 28, 2003 was alleged to have been sent to an email address other than the one associated with Gruenberg as De La Cruz states on the affidavit. Second, the email is to Fred not Gary Gruenberg. Why would Chou not send this email to Gary Gruenberg directly or copied? Finally there is no email response from Gruenberg to either Fred or Chou. The email on September 3, 2003 again the conversation is between Fred and Paul and supposedly forwarded to an email other than that associated with Gruenberg by De La Cruz affidavit. Again there is no email response from Gruenberg to either Fred or Paul. The email on September 16, 2003 again the conversation is between Fred and Paul and supposedly forwarded to an email other than that associated with Gruenberg by De La Cruz affidavit. Also in you will notice the header in the subject line one says: Fw: info and the other says Re: info. Plaintiff further makes a claim that twenty-four minutes later, without providing any proof whatsoever, that Gruenberg conferred with Harrick. Again Plaintiff makes allegations without any email to back it up. (Ltr. at 5).

**Response**:

The e-mails dated August 28, 2003, September 3, 2003 and September 16, 2003 were all forwarded to Gruenberg at Cruise4U@earthlink.net. (De La Cruz Aff., Exs.

F, G, A). As explained above and in Mr. De La Cruz's second affidavit, this e-mail address belongs to Gruenberg and Gruenberg does not assert otherwise.

The fact that Kroll was unable to recover Gruenberg's responses to some of these e-mails is probative of nothing. Kroll was unable to recover and restore every single e-mail off of Harrick's computers, and Gruenberg could have just as easily responded to some or all of these e-mails by phone.

In addition, as is standard e-mail convention, the subject line on the portion of the September 16, 2003 e-mail string Harrick forwarded to Gruenberg changed from "info" to "FW: info." (De La Cruz Aff. I, Ex. A).

Finally, it is irrelevant whether Harrick "conferred" with Gruenberg before responding to Chou's September 16, 2003 demand for sample Pantene and Head & Shoulders packaging for copying. (*Id.* at 189). What matters is that Harrick forwarded Chou's demand to Gruenberg and asked Gruenberg to "Tell me what to reply?"[4] (*Id.*).

**Assertion**:

> After spending $5 million on their investigation by Plaintiff attorneys, two *ex parte* seizures, a court ordered search in Panama, totally disputable and maybe falsified evidence, no email correspondences or responses from Gruenberg on Harrick's computers, no direct communications between Harrick, Chou with Gruenberg, no documents with Gruenberg's name on it, only proves that Gruenberg did not know and was not involved in the manufacturing and sale of counterfeit products. (Ltr. at 5-7).

---

4 It is also noteworthy that after forwarding the e-mail to Gruenberg, Harrick responded to Chou: "We send you all of the boxes complete . . .," (*id.*, Ex. I at PANAMA 18). It is reasonable to assume that Harrick's reference to "we" includes Gruenberg, the only person in the counterfeiting ring who resides in the United States and has easy access to Pantene and Head & Shoulders shampoo packaged for sale in the United States.

**Response**: Because, as shown above, these assertions either or both are indisputably false and/or do not create any genuine issue of material fact, P&G is entitled as a matter of law to all of the relief requested in this motion.

## CONCLUSION

For the foregoing reasons, P&G respectfully requests that its motion for summary judgment against defendant Gruenberg be granted and that the Court permanently enjoin Gruenberg from selling Pantene and Head & Shoulders hair care products and award P&G: (i) $11 million in statutory damages; (ii) punitive damages; (iii) $5 million in attorneys' fees and related investigative costs; and (iv) pre-judgment interest.

Dated: April 2, 2007
New York, New York

Kramer Levin Naftalis & Frankel LLP

By: Yehudis Lewis
Geoffrey Potter (GP-8073)
Yehudis Lewis (YL-9974)

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Fulbright & Jaworski L.L.P.

By: Mark Mutterperl
Mark N. Mutterperl (MM-1977)
Jessica Parise (JP-6111)

666 Fifth Avenue
New York, New York 10103
(212) 318-3000

Attorneys for Plaintiff
The Procter & Gamble Company