GARY GRUENBERG
1000 W. ISLAND BLVD
SUITE 1009
MIAMI, FLORIDA 33160

*May 18, 2007*

**AFFIDAVIT**

**BY CERTIFIED LETTER US POST OFFICE**

Honorable Dennis R. Hurley
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plazas
Central Islip, New York 11772

Re: **The Procter & Gamble Company vs. Xetal, Inc., et al**
**Case No. 04 Civ. 2820(DRH)**

Dear Judge Hurley:

I, Gary Gruenberg, Defendant represent myself. I do not have the sources of savings or income to hire attorneys to challenge two of the largest law firms in New York with unlimited resources provided by their client Proctor and Gamble.

Defendant, Gary Gruenberg respectfully disputes and opposes P&G's Memorandum of Law in Support of Motion for Summary Judgment as it does not contain any real evidence and material facts to support the motion under Federal Rules of Civil Procedure Rule 56 for an order awarding its summary judgment, a permanent injunction, statutory damages, pre-judgment interest, punitive damages and attorney's fees against defendant Gary Gruenberg.

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT GARY GRUENBERG

Through comprehensive discovery, including hundreds of hours of testimony, thousands of pages of documents and two ex parte seizures, P & G has not obtained any credible evidence whatsoever to support their claim.

## STATEMENT OF FACTS

Defendant Harrick, runs a legitimate import/export company called Latin Import SA for 26 years. His web site is www.latinimport.net. He has never been charged and convicted for any counterfeiting activities anywhere. He sells private label products as well as name brand products.

Name brand products are obtained thru legitimate factories, authorized agents and the grey market. Overseas factories are licensed by P&G and others to manufacture and sell their products to certain markets. They divert merchandise to the grey market when they have excess capacity or need cash. There are many different types of packaging which conform to different markets. Product sizes, packaging, language and SKU codes are some of the differences you will find for the same products. Factories will provide the products and packaging required for the markets their customers are selling to. Companies such as P&G don't like the grey market but they actually create these markets based on their own behavior. Harrick stated to me and his customers ATM buys direct from the manufacturer and authorized distributors who distribute those products to the Caribbean Islands. Each market in the Caribbean (British, French, Dutch and US Jurisdictions) have different packaging requirements. Worldwide, this is not unusual in the grey market business.

P&G has never proved in the Motion for Summary Judgment that the merchandise was actually counterfeit. Second, P&G never made a recall of the merchandise to the public. Finally, there is no counterfeiting ring which is alleged by P&G. Gruenberg is not a ring US operative.

Gruenberg has never met, talked to or seen Paul Chou. There are no email, written or voice correspondences between Gruenberg and Paul Chou of any kind whatsoever. Gruenberg never conspired to manufacturer P&G products.

In October 2004, P&G obtained an order from the Panamanian court authorizing P&G to search not only Harrick's offices and his computers but also all his warehouses. No counterfeit merchandise of any kind was found in any of the three warehouses, no counterfeit samples were found in his offices and the Panama court closed the case finding no evidence of any wrongdoing.

Authentication of the emails presented by P&G as evidence have not been verified by the affidavit of Miguel De La Cruz. As your honor may recall, this is the third revision and correction of the simple Affidavit of Miguel De La Cruz. Every time Gruenberg disputes the alleged evidence in the affidavit with a statement of fact P&G has De La Cruz change it again to suit P&G's needs. The accuracy of the affidavit has been revised three times by this experienced expert who works for P&G. If this was testimony in a trial the credibility of this witness would be suspect and challenged.

There is no security measures stated in the affidavit which would be valid in court. We suspect that P&G manufactured or manipulated the emails they presented to bolster their claim. Without presenting the ISP transaction logs, the RFC data and Audit

Trail there's no concrete proof that these emails actually exist. Without the Electronic Signature, there is no proof that the person who had been sending those messages is the person himself. Also, these emails were not copied to another person or contact person therefore there is no proof that these emails were in fact sent by the person and to the persons P&G says it was and that the emails were even sent at all. (There is no CC or BC ) Furthermore, these emails are impeachable or capable of being thrown out as evidence as there is no other corroboration. There is no referencing the subject of any emails in a hard copy format such as a written letter or a recording, such as a message on an answering machine. There is no email plus a written letter or voice message where Gruenberg makes a clear reference to the subject under discussion, where the second piece of evidence bolsters the first piece of evidence. These emails are hearsay as they are considered human statements that are not computer generated so therefore cannot be considered business records. Also, emails are susceptible to being altered by the systems within which they are stored. Archiving systems that automatically backup or purge data cause email files to register an alteration and thus e-mails are never in a final form in terms of when they were accessed or changed. P&G did not provide any archiving information proving these emails were in final form and unaltered. Emails are easily changed and tampered with as opposed to other forms of verbal or written communications. Emails are easily manipulated, altered and damaged after they were created. Therefore, P&G has not shown that these emails are reliable or trustworthy. Also, during the depositions of other settling defendants and Gruenberg the defending attorneys upon reviewing the emails objected to the reliability and credibility of those emails. During the depositions of Defendant's Jan Stahl, Global Marketing and Gruenberg, emails presented as exhibits were suspected of being out of order and manipulated. *United States v. Whitaker*, 127 F.3d 595, 602 (7th Cir. 1997)

Harrick had connection to ATM whose contacts were private and unavailable to Gruenberg. These connections are the assets and secrets of the business. Harrick offered Gruenberg the selling potential thru this company. Gruenberg introduced customers to Harrick who in turn offered for sale Health & Beauty Aids, Perfumes & Colognes, Office Supplies, Grocery Items, Crystal & Tableware as well as other products. Gruenberg did not directly sell the specific P&G products as reflected in the invoices of P&G's Exhibit D. They came from Harrick, and his employees, representing ATM. Upon acceptance of the terms and conditions Harrick sent invoices to the customers again provided in Exhibit D. Gruenberg simply referred customers to Harrick who negotiated, invoiced and completed the inspections and delivery of those sales. Gruenberg would get a copy of those offers and purchases. At first, customers sent Gruenberg deposits which Gruenberg would forward to Harrick to send to ATM. Eventually, customers sent deposits to Harrick for further deposit to ATM. These buyers were seasoned veterans with years of experience in this field of expertise and had inspected, approved, signed off and accepted delivery of the merchandise overseas. They had certified inspection companies check the merchandise and packing. They had photos of merchandise and packing sent to them by email for review. Final payment was sent overseas to ATM.

Contrary to the P&G statements about offering a few counterfeit products, these customers were offered 50-60 different product offerings for immediate delivery such as

soaps, deoderant, dental floss, tooth brushes, scotch tape, sponges, laundry detergents, shampoos and conditioners, aluminum and plastic wrap, razors, razor blade replacements, disposable razors, paper and plastic cups, blank computer cd's, computer floppy discs, pens and other various products. Most of these offers were rejected due to size, multiples, packaging, language, timing, market conditions and/or high prices.

Gruenberg operated in an open, clear and transparent way. Never did Gruenberg try to conceal any evidence, obstruct P&G's investigation or coerce P&G into dropping this lawsuit. Gruenberg should be entitled to have a fair trial by jury to defend his innocence and clear his name.

Because, as shown above, these assertions are disputably false and/or do create genuine issues of material fact, Defendant, Gary Gruenberg is entitled as a matter of law to go to trial and to request your honor to deny the Plaintiff's Motion For Summary Judgment.

## CONCLUSION

For the foregoing reasons, Defendant, Gary Gruenberg respectfully requests that P&G's Motion for Summary Judgment be Denied as to Liability, Entitled to Injunctive Relief and Enhanced Damages, Statutory Damages, Punitive Damages, Attorney Fees, Investigative Costs and Prejudgment Interest.

Dated: May 18, 2007

By: ______________
Gary Gruenberg FLDL EXP 1-7-11

1000 W. Island Blvd
Suite 1009
Miami, Florida 33160

Sworn to before me this 18th
Day of May, 2007

______________
Notary Public

DAVITA SYFERT
MY COMMISSION # DD 643442
EXPIRES: February 25, 2011
Bonded Thru Notary Public Underwriters